TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
POONAM G. KUMAR (Cal. Bar No. 270802)
ROGER A. HSIEH (Cal. Bar No. 294195)
GREGORY BERNSTEIN (Cal. Bar No. 299204)
Assistant United States Attorneys
Major Fraud/General Crimes Sections
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0719
    E-mail:   poonam.kumar@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>           v.<br><br>ZHONGTIAN LIU,<br> aka "Liu Zhongtian,"<br> aka "Chairman,"<br> aka "Uncle Liu,"<br> aka "UL,"<br> aka "Big Boss,"<br>CHINA ZHONGWANG HOLDINGS<br>   LIMITED,<br> aka "ZW,"<br> aka "Mother Ship,"<br>ZHAOHUA CHEN,<br> aka "Chen Zhaohua,"<br> aka "Uncle Chen,"<br>XIANG CHUN SHAO,<br> aka "Johnson Shao,"<br>PERFECTUS ALUMINIUM Inc.,<br> aka "Perfectus Aluminum Inc.,"<br>PERFECTUS ALUMINUM ACQUISITIONS<br>   LLC,<br>SCUDERIA DEVELOPMENT LLC,<br>1001 DOUBLEDAY LLC,<br>VON KARMAN – MAIN STREET LLC, and<br>10681 PRODUCTION AVENUE LLC,<br><br>       Defendants. | No. CR 19-282-RGK<br><br><u>DISPUTED PROPOSED JURY</u><br><u>INSTRUCTIONS</u> |

1

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Roger A. Hsieh, Poonam G. Kumar, and Gregory D. Bernstein, and defendants Perfectus Aluminium Inc., also known as "Perfectus Aluminum Inc." and Perfectus Aluminum Acquisitions, LLC (collectively, the "Perfectus defendants"), by and through their counsel of record, Robert Ruyak; Scuderia Development, LLC; 1001 Doubleday, LLC; Von Karman-Main Street, LLC; and 10681 Production Avenue, LLC (collectively, the "Warehouse defendants"), by and through their counsel of record, Stephen Larson, Hilary Potashner, and A. Alexander Lowder (collectively, the "parties") hereby submit a set of proposed jury instructions regarding which there is a dispute. The parties respectfully reserve the right to supplement these jury instructions as needed.

Dated: 8/5/2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
POONAM G. KUMAR
ROGER A. HSIEH
GREGORY BERNSTEIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**INDEX OF DISPUTED PROPOSED JURY INSTRUCTIONS**

| Proposed No. | Title | Source | Page |
|---|---|---|---|
| 21A | Government's Proposed Instruction Reasonable Doubt – Defined | Ninth Circuit Model Criminal Jury Instructions, No. 3.5 (2010 ed.) | 9 |
| 21B | Defendants' Proposed Instruction Presumption of Innocence, burden of proof, and reasonable doubt | O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, Vol. 1A § 12.10 (6th ed. 2021) | 10 |
| 39A | Government's Proposed Instruction Corporate Responsibility | Eighth Circuit Model Criminal Jury Instructions, No. 5.03 (2017 ed.) [Corporate Responsibility] [modified for this case]; United States v. Hilton Hotels Corp., 467 F.2d 1000, 1004-07 (9th Cir. 1973); United States v. Basic Const. Co., 711 F.2d 570, 572 (4th Cir. 1983); United States v. Mongol Nation, 370 F. Supp. 3d 1090, 1128-29 (C.D. Cal. 2019); United States v. Shortt Accountancy Corp., 785 F.2d 1448 (9th Cir. 1986). | 16 |
| 39B | Defendants' Proposed Instruction Corporate Responsibility | Eighth Circuit Model Jury Instruction No. 5.03 | 18 |

1

| Proposed No. | Title | Source | Page |
|---|---|---|---|
| 40 | Government's Proposed Instruction Perfectus Entities | United States v. Polizzi, 500 F.2d 856, 907 (9th Cir. 1974); United States v. Alamo Bank of Tex., 990 F.2d 828, 830 (5th Cir. 1989); . Corp. Code § 1107; Cal. Corp. Code § 17710.16; Del. Code Ann. tit. 8 § 259; United States v. Bestfoods, 524 U.S. 51, 63 (1998); United States v. Wilshire Oil Co. of Tex., 427 F.2d 969, 973-74 (10th Cir. 1970) | 26 |
| 41A | Government's Proposed Instruction Conspiracy to Defraud United States and Conspiracy to Commit Offense Against United States -- Elements | Ninth Circuit Model Criminal Jury Instructions, Nos. 8.20 and 8.21 (2010 ed.) | 31 |
| 41B | Defendants' Proposed Instruction on Conspiracy to Defraud United States | Ninth Circuit Model Jury Instructions, Nos. 8.21 (2010 ed.) [Modified – Conspiracy to Defraud the United States]; Third Circuit Model Criminal Jury Instructions, No. 6.18.371A (Nov. 2018 ed.) | 34 |

| Proposed No. | Title | Source | Page |
|---|---|---|---|
| 41C | Defendants' Proposed Instruction on Special Verdict | 11th Cir. Pattern Jury Instruction No. 11.2 [Modified – Multiple Objects of a Conspiracy – For Use With General Conspiracy Charge 13.1]; see also United States v. Manarite, 44 F.3d 1407, 1414 (9th Cir. 1995) | 47 |
| 41D | Defendants' Proposed Instruction on Conspiracy to Defraud | Ninth Circuit Model Criminal Jury Instructions, No. 8.21 (2010 ed.) [Modified – Conspiracy to Defraud the United States] | 50 |
| 41E | Defendants' Proposed Instruction on Agreement to Defraud | Hammerschmidt v. United States, 265 U.S. 182, 188 (1924); see also Shaw v. United States, 137 S. Ct. 462, 469 (2016). | 53 |
| 41F | Defendants' Proposed Instruction on Conspiracy Object Wire Fraud | Ninth Circuit Model Criminal Jury Instructions, Nos. 8.21 (2010 ed.) [Modified - Conspiracy to Defraud the United States] | 58 |

| Proposed No. | Title | Source | Page |
|---|---|---|---|
| 41G | Defendants' Proposed Instruction Agreement re Wire Fraud | Ninth Circuit Model Criminal Jury Instructions, Nos. 8.124 and 8.21 (2010 ed.) [Wire Fraud – Elements; Modified - Conspiracy to Defraud the United States]; United States v. Miller, 953 F.3d 1095, 1101-03 (9th Cir. 2020); see also Shaw v. United States, 137 S. Ct. 462, 469 (2016). | 61 |
| 41H | Defendants' Proposed Instruction on Conspiracy to Commit Customs Fraud | Ninth Circuit Model Criminal Jury Instructions, Nos. 8.20 and 8.21 (2010 ed.) [Modified – Conspiracy and Conspiracy to Defraud the United States] | 66 |
| 41I | Defendants' Proposed Instruction on Customs Fraud Agreement | Ninth Circuit Model Criminal Jury Instructions, Nos. 8.36 and 8.21 (2010 ed.) [Passing False Documents Through Customhouse – Elements; Modified - Conspiracy to Defraud the United States] | 68 |
| 41J | Defendants' Proposed Instruction on Conspiracy to Commit Money Laundering | Ninth Circuit Model Criminal Jury Instructions, No. 8.21 (2010 ed.) [Modified – Conspiracy to Defraud the United States] | 70 |

4

| Proposed No. | Title | Source | Page |
|---|---|---|---|
| 41K | Defendants' Proposed Instruction on Money Laundering Agreement | Ninth Circuit Model Criminal Jury Instructions, Nos. 8.148 and 8.21 (2010 ed.) [International Promotional Laundering – Elements; Modified – Conspiracy to Defraud the United States] | 72 |
| 41L | Defendants' Proposed Instruction on Multiple Conspiracies | Ninth Circuit Model Criminal Jury Instructions, No. 8.22 [Multiple Conspiracies] | 74 |
| 41M | Defendants' Proposed Instruction on Co-Conspirator Statements | O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, Vol. 1A, § 18.02 (6th ed. 2021) [Common scheme or plan—Evidence of acts or declarations of confederates] | 78 |
| 43 | Government's Proposed Instruction on Conspiracy | United States v. Ortega, 203 F.3d 675, 683 (9th Cir. 2000); United States v. Kiriki, 756 F.2d 1449, 1453 (9th Cir. 1985); Davenport v. United States, 260 F.2d 591, 598 (9th Cir. 1958); United States v. Giese, 597 F.2d 1170, 1197-98 (9th Cir. 1979) | 83 |
| 44 | Government's Proposed Instruction on Liability for Substantive Offense Committed by a Co-Conspirator (Pinkerton Charge) | Ninth Circuit Model Criminal Jury Instructions, No. 8.25 (2010 ed.) | 86 |

| Proposed No. | Title | Source | Page |
|---|---|---|---|
| 48 | Government's Proposed Instruction Pallets Within Scope of AD/CVD Orders | United States Department of Commerce, Scope Ruling: AEFTC 6xxx Series Pallets (June 13, 2017); Perfectus Aluminum, Inc. v. United States, 391 F. Supp. 3d 1341 (Ct. Int'l Trade 2019), aff'd, Perfectus Aluminum, Inc. v. United States, 836 Fed. Appx. 883 (Fed. Cir. Nov, 6, 2020), petition for reh'g and en banc denied; United States v. Kahre, 737 F.3d 554 (9th Cir. 2013); United States v. Powell, 955 F.2d 1206 (9th Cir. 1992) | 92 |
| 49A | Government's Proposed Instruction Intent to Defraud -- Defined | Ninth Circuit Model Criminal Jury Instructions, No. 5.12 (2010 ed.) | 98 |
| 49B | Defendants' Proposed Instruction Intent to Defraud – Defined | United States v. Miller, 953 F.3d 1095, 1101-03 (9th Cir. 2020); see also Shaw v. United States, 137 S. Ct. 462, 469 (2016). | 99 |
| 51 | Government's Proposed Instruction – Deliberate Ignorance | Ninth Circuit Model Criminal Jury Instructions, No. 5.8 (2010 ed.) | 103 |
| 52A | Government's Proposed Instruction -- Willfully | Bryan v. United States, 524 U.S. 184, 190-91 (1988); United States v. Awad, 551 F.3d 930, 939-41 (9th Cir. 2009) | 108 |

6

| Proposed No. | Title | Source | Page |
|---|---|---|---|
| 52B | Defendants' Proposed Instruction – Willfully | Model Crim. Jury Instr. 9th Cir. 8.73 (2021); United States v. Lee; United States v. Mousavi, 604 F.3d 1084, 1092 (9th Cir. 2010) (citing Bryan v. United States, 524 U.S. 184 (1998)); Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 58, n. 5 (2007); United States v. Huang, 87 F. App'x 656, 658–59 (9th Cir. 2004). | 109 |
| 56 | Defendants' Proposed Instruction – Untimely Disclosure of Exculpatory or Impeachment Evidence | See Comment to Ninth Circuit Model Criminal Jury Instructions, No. 4.20 (2010 ed.); United States v. Garrison, 888 F.3d 1057, 1061-66 (9th Cir. 2018); see also United States v. Mikaelian, No. 2:11-cr-00922-FMO (C.D. Cal. 2014) (Dkt. 849). | 116 |
| 57 | Defendants' Proposed Instruction – Entrapment by Estoppel | Ninth Circuit Model Criminal Jury Instructions, No. 6.2B (2010 ed.). | 124 |

7

| Proposed No. | Title | Source | Page |
|---|---|---|---|
| 58 | Customs Fraud / Mens Rea | See Indictment, at ¶¶ 33(a)(ii)-(iii); 33(a)(aa)-(cc); 34 [Overt Act Nos. 24-29, 31-32, 34, 37-38, 42-44, 46-53, 55, 57, 83]; Russell v. United States, 369 U.S. 749, 770 (1962); United States v. Floresca, 38 F.3d 706, 710 (4th Cir. 1994)); United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir. 1984); United States v. Adamson, 291 F.3d 606, 615 (9th Cir. 2002), holding modified on other grounds by United States v. Larson, 495 F.3d 1094 (9th Cir. 2007) (citing *Von Stoll*, 726 F.2d at 586). See also United States v. Dipentino, 242 F.3d 1090, 1095 (9th Cir. 2001). | 128 |

8

GOVERNMENT'S DISPUTED INSTRUCTION NO. 21A

Proof beyond a reasonable doubt is proof that leaves you firmly convinced the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty. On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty.

Ninth Circuit Model Criminal Jury Instructions, No. 3.5 (2010 ed.) [Reasonable Doubt -- Defined]

9

<u>DEFENDANTS' DISPUTED INSTRUCTION NO. 21B</u>

I instruct you that you must presume the Defendants to be innocent of the crimes charged. Thus the defendants, although accused of crimes in the indictment, begin the trial with a "clean slate"—with no evidence against them. The indictment, as you already know, is not evidence of any kind. The Defendants are, of course, not on trial for any act or crime not contained in the indictment. The law permits nothing but legal evidence presented before the jury in court to be considered in support of any charge against a defendant. The presumption of innocence alone, therefore, is sufficient to acquit the Defendants.

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. The defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government.

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

Unless the government proves, beyond a reasonable doubt, that Defendants have committed each and every element of the offenses

10

charged in the indictment, you must find Defendants not guilty of the offenses. If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury must, of course, adopt the conclusion of innocence.

O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, Vol. 1A, § 12:10 (6th ed. 2021) [Presumption of innocence, burden of proof, and reasonable doubt].

11

GOVERNMENT'S POSITION REGARDING PROPOSED INSTRUCTIONS

NOS. 21A AND NO. 21B

The government objects to Defendant's Disputed Instruction No. 21B insofar as it does not follow the Ninth Circuit Model Criminal Jury Instructions regarding the presumption of innocence and the standard of proof beyond a reasonable doubt. The government's proposed reasonable doubt instruction, Proposed Instruction No. 21A, which is the Ninth Circuit's model instruction, accurately and succinctly reflects Ninth Circuit precedent. In contrast, the defendant's proposed instruction is confusing and misstate the applicable law.

The Ninth Circuit Model Instructions Nos. 1.2 and 3.2 (Proposed Instructions Nos. 2 and 20) regarding the presumption of innocence correctly state the law. Gibson v. Ortiz, 387 F.3d 812, 820 (9th Cir. 2004), overruled on other grounds, Byrd v. Lewis, 566 F.3d 855 (9th Cir. 2009)(citing Victor v. Nebraska, 511 U.S. 1, 5 (1994))("Although the Constitution does not require jury instructions to contain any specific language,' the instructions must convey both that a defendant is presumed innocent until proven guilty and that he may only be convicted upon a showing of proof beyond a reasonable doubt.".) In contrast, defendant's proposed jury instruction is unnecessarily confusing and requires the jury to decide what is "legal evidence" and what is not.

The Ninth Circuit Model Instruction No. 3.5 (Government Proposed Instruction 21A) regarding reasonable doubt comports with Ninth Circuit precedent regarding the standard of reasonable doubt.

See United States v. Ruiz, 462 F.3d 1082, 1087 (9th Cir. 2006) (citing United States v. Nelson, 66 F.3d 1036, 1045 (9th Cir. 1995)) (finding no error in instructing the jury with the Ninth Circuit model instruction for reasonable doubt).

The Model Instruction regarding reasonable doubt presents the jury with two options: (1) either the evidence presented at trial convinces the jury beyond a reasonable doubt that the defendant is guilty or (2) it does not.  Defendant has proposed altering the model instruction by including three additional sentences.

First, defendant proposes including the following language: "A reasonable doubt is a doubt based upon reason and common sense – the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her affairs." These additional sentences – not called for in the Ninth Circuit Model Instruction – attempt to again define reasonable doubt, which is already covered by the Model Instruction.

Second, defendants seek to add the following sentence: "Unless the government proves, beyond a reasonable doubt, that the defendant has committed each and every element of an offense charged under the indictment, you must find the defendant not guilty of that offense."  This sentence modifies the first sentence of the third paragraph of the Model Instruction.  There is no reason to change the language in the Model Instruction when it provides the same information in a more straightforward manner.

Third, defendant seeks to add the following sentence at the end:  "If you view the evidence in the case as reasonably permitting either of two conclusions – one of innocence, the other of guilty – you must adopt the conclusion of innocence."  This third proposed sentence suggests that the jury could somehow be convinced beyond a reasonable doubt of the defendant's guilt, but still be required to conclude he is not guilty.  The additional sentence is unnecessary since, by definition, if the jury concluded that the evidence reasonably permitted a conclusion of innocence they would be required to vote not guilty under the model instruction.  Conversely, the mandate that jurors vote guilty when they conclude that the evidence proves guilt beyond a reasonable doubt is proper on its own without the additional clarification defendant seeks.  The additional language is confusing and unnecessary.

As the Ninth Circuit has repeatedly held, the standard of proof beyond a reasonable doubt is accurately summarized in the Ninth Circuit Model Instruction.  United States v. Mikhel, 889 F.3d 1003, 1033 (9th Cir. 2018)("[W]e have repeatedly upheld the model [reasonable doubt] instruction.");  United States v. Soto-Zuniga, 837 F.3d 992, 1004 (9th Cir. 2016); United States v. Meraz-Olivera, 472 Fed. Appx. 610, 612 (9th Cir. 2012)("The model instruction correctly states the law, and does not 'detract from the heavy burden suggested by the term 'reasonable doubt' standing alone." (citations omitted).)  As such, the Ninth Circuit Model Jury Instruction on reasonable doubt should be used.

14

DEFENDANTS' POSITION REGARDING PROPOSED INSTRUCTIONS

NOS. 21A AND NO. 21B

Defendants object to the government's proposed instruction on the ground that it contains an incomplete explanation of reasonable doubt.

Defendants propose the O'Malley reasonable doubt instruction in lieu of the government's proposed instruction because the O'Malley instruction provides a more comprehensive explanation of the reasonable doubt standard. *See United States v. Bell*, No. 0204-CR-0212, 2010 WL 1854113, at *10 (W.D. Pa. May 3, 2010) (holding that the O'Malley reasonable doubt jury instruction, when considered with other jury instructions, "provide[s] the jury with a full understanding of the definition of the reasonable doubt standard.").

15

GOVERNMENT'S PROPOSED INSTRUCTION NO. 39A

Defendant Perfectus Aluminium Inc., aka "Perfectus Aluminum Inc." is a corporation.  Defendants Perfectus Aluminum Acquisitions LLC, Scuderia Development LLC, 1001 Doubleday LLC, Von Karman – Main Street LLC, and 10681 Production Avenue LLC are limited liability companies ("LLCs").  A corporation or LLC may be found guilty or not guilty of a criminal offense just as an individual personal defendant may be.

A corporation or LLC can act only through its agents—that is, its directors, officers, employees, and other persons authorized to act for it or with authority to direct others to act for it.  The knowledge obtained by agents of corporations or LLCs acting within the scope of their express or apparent authority is imputed to the respective corporation or LLC.  Accordingly, if a specific agent knows something within the scope of his or her agency, then the respective corporation or LLC can be said to know the same thing.

To find a corporation or LLC guilty you must find beyond a reasonable doubt that:

First, each element of the crime charged against the corporation or LLC was committed by one or more of its agents;

Second, in committing those acts the agents acted on behalf of the corporation or LLC's behalf or, at least in part, to benefit the corporation or LLC; and

Third, each act was within the scope of the agent's express or apparent authority who committed it.  Apparent authority is the authority which outsiders would normally assume that the agent would

16

have, judging from the agent's position with the company and the circumstances surrounding the agent's past conduct.

For an act to be within the scope of an agent's express or apparent authority it must relate directly to the performance of the agent's general duties for the corporation or LLC.  It is not necessary for the government to prove that act itself was authorized by the corporation or LLC.

If an agent was acting within the scope of his or her express or apparent authority, you may find the company or LLC guilty for an agent's act even if the act was illegal, was contrary to his or her employer's instructions, or was against the corporation's or LLC's policies.

Eighth Circuit Model Criminal Jury Instructions, No. 5.03 (2017 ed.) [Corporate Responsibility] [modified for this case]; United States v. Hilton Hotels Corp., 467 F.2d 1000, 1004-07 (9th Cir. 1973); United States v. Basic Const. Co., 711 F.2d 570, 572 (4th Cir. 1983); United States v. Mongol Nation, 370 F. Supp. 3d 1090, 1128-29 (C.D. Cal. 2019); United States v. Shortt Accountancy Corp., 785 F.2d 1448 (9th Cir. 1986).

17

DEFENDANTS' PROPOSED INSTRUCTION NO. 39B

Defendants Scuderia Development LLC, 1001 Doubleday LLC, Von Karman – Main Street, LLC, 10681 Production Avenue, LLC, Perfectus Aluminum Inc. and Perfectus Aluminum Acquisitions LLC are corporations.

A corporation may be found guilty of a criminal offense.

A corporation can act only through its agents—that is, its directors, officers, employees, and other persons authorized to act for it.

To find a corporate defendant guilty you must find beyond a reasonable doubt that:

*One*, each element of the crime charged against the corporation was committed by one or more of its agents; and

*Two*, in committing those acts the agent*[s]* intended, at least in part, to benefit the corporation; and

*Three*, each act was within the scope of employment of the agent who committed it.

For an act to be within the scope of an agent's employment it must relate directly to the performance of the agent's general duties for the corporation. It is not necessary that the act itself have been authorized by the corporation.

*//*

*//*

18

If an agent was acting within the scope of his employment, the fact that the agent's act was illegal, contrary to his employer's instructions or against the corporation's policies will not relieve the corporation of responsibility for it.

Eighth Circuit Model Criminal Jury Instruction, No. 5.03 (2011 ed.) [Corporate Responsibility].

19

GOVERNMENT'S POSITION REGARDING PROPOSED INSTRUCTIONS

NOS. 39A AND 39B

The defense proposes the Eighth Circuit Model Instruction on Corporate Responsibility.  The government proposes the Eighth Circuit Model Instruction on Corporate Responsibility with modifications based on Ninth Circuit and other precedent applicable to the facts of this case.

First, the government's proposed instruction distinguishes between corporations and LLCs because there Perfectus and Warehouse defendants have difference corporate statuses.

Second, the government's proposed instruction recognizes that the knowledge obtained by agents acting within the scope of their authority is imputed to the respective corporation or LLC.  See United States v. Pacific Gas and Elec. Co., 2015 WL 9460313, at *3-5 (N.D. Cal. Dec. 23, 2015); United States v. T.I.M.E.-D.C., Inc., 381 F. Supp. 730, 739 ("knowledge acquired by employees within the scope of their employment is imputed to the corporation"); see also United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1454 (9th Cir. 1986) (corporation guilty given collective intent in submitting false tax returns).

Third, the government's proposed instruction distinguishes between an agent's express or apparent authority.  See United States v. Hilton Hotels Corp., 467 F.3d 1000, 1007 (9th Cir. 1972) (corporation can be liable for acts of agents in the scope of employment even though contrary to corporate policy and express instructions to agent); Slayers v. Metro. Life Ins. Co., 871 F.3d

20

934, 940 (9th Cir. 2017) ("The legal consequences of an agent's actions may be attributed to a principal when the agent has actual authority (express or implied) or apparent authority"); Continental Baking Co. v. United States, 281 F.2d 137, 150-51 (6th Cir. 1960) ("A corporation is legally bound by the acts and statements of its agents done or made within the scope of their express or apparent authority. Express authority is that specifically given to an agent by his superior; apparent authority is the authority which outsiders would normally assume that the agent would have, judging from his position with the company and the circumstances surrounding his past conduct."). Here, co-conspirators may have been acting under their apparent authority at times.  It is important that the jury instruct capture the distinction between express and apparent authority.

21

DEFENDANTS' OBJECTION TO GOVERNMENT'S PROPOSED INSTRUCTION NO 39A

Defendants object to the government's proposed instruction on the grounds that it includes unwarranted and confusing modifications to Eighth Circuit Model Criminal Jury Instruction, No. 5.03. Defendants propose the use of the Eighth Circuit Model Criminal Jury Instruction, No. 5.03 without superfluous and confusing additions by the government.

The government's addition of language imported from agency law is particularly confusing and should be removed from the proposed instruction.  Specifically, the government proposes adding language about imputing the knowledge of agents to business entities, and seeks to substitute the phrase "scope of employment" with the scope of "express or apparent authority."  *See* Government's Proposed Instruction No. 36 ("The knowledge obtained by agents of corporations or LLCs acting within the scope of their express or apparent authority is imputed to the respective corporation or LLC. Accordingly, if a specific agent knows something within the scope of his or her agency, then the respective corporation or LLC can be said to know the same thing."); ("[a]pparent authority is the authority which outsiders would normally assume that the agent would have, judging from the agent's position with the company and the circumstances surrounding the agent's past conduct"); ("[f]or an act to be within the scope of an agent's express or apparent authority it must relate directly to the performance of the agent's general duties for the corporation or LLC.").

22

In its comments to this model instruction, the Eighth Circuit cautions against this very situation and urges *against* importing concepts of civil agency law into criminal law. *See* Comment to Eighth Circuit Model Criminal Jury Instruction, No. 5.03 ("Some courts in criminal cases have attempted to define 'scope of employment' in terms of 'actual' and 'apparent' authority. . . these concepts and their definitions are most helpful and relevant in deciding certain contract and tort questions in civil cases and do not properly address the true basis for criminal liability."). The government's proposed instruction should be limited to the language of Eighth Circuit Model Criminal Jury Instruction, No. 5.03, removing any superfluous and confusing additions.

Defendants object to the government's proposed instruction as factually inaccurate in that it improperly seeks stipulation to an issue of fact where the government bears the burden of proof. *See In re Winship*, 397 U.S. 358, 364 (1970) (Due Process requires that the government provide "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.").

"A corporation is a distinct legal entity." *Loyd v. Paine Webber, Inc.*, 208 F.3d 755 (9th Cir. 2000). Here, however, the government's proposed instruction seeks to impose criminal liability across several corporate entities, blending disparate theories of liability, which do not all apply in criminal cases.

Specifically, the government fails to cite any authority for the proposition that Perfectus Aluminium, Inc. and Perfectus

23

Acquisitions, LLC can be held liable for the acts of the other.  The proposed instruction does not identify the theory underpinning such liability.  Based on the government's citation to *U.S. v. Bestfoods*, 524 U.S. 51, 63 (1998), it appears the government seeks to pierce the corporate veil.  In that case, brought under section 107(a)(2) of the Comprehensive Environmental Response, Compensation, and Liability ACt of 1980 (CERCLA), the Supreme Court affirmed that "when (but only when) the corporate veil may be pierced, may a parent corporation be charged with derivative CERCLA liability for its subsidiary's actions."  The current criminal case does not involve CERCLA, and the government fails to cite any authority that derivative liability under a piercing the corporate veil theory is appropriate in a criminal prosecution.  Further, even if the such liable is appropriate, the proposed instruction fails to advise the jury of the factual findings required to imposed such liability.

Moreover, in an attempt to impose liability on Perfectus Aluminum, Inc. and on Perfectus Acquisitions, LLC for acts allegedly taken by Pengcheng Aluminum Enterprise, Inc.; Century American Aluminum, Inc.; Global Aluminum (USA), Inc.; American Apex Aluminum, Inc.; Aluminum Source, Inc.; Transport Aluminum, Inc.; and Aluminum Industrial, Inc., the government cites to a concurring opinion in *U.S. v. Polizzi*, 500 F.2d 856, 907 (9th Cir. 1974), a citation that only speaks to liability for successor entities.  *Id.* at 907-909. It does not purport to impose liability merely because entities may be related, or if entities share a common parent.  Likewise, the government's citations to *U.S. V. Alamo Bank of Texas*, 880 F.2d 828.

24

830 (5th Cir. 1989) and to *U.S. v. Wilshire Oil Co. of Tex*, 427 F.2d 969, 973-74 (10th Cir. 1970), only speaks to the criminal liability of successor entities, and not the liability of related entities. Here, the government's proposed instruction fails to identify any of the factual findings necessary to impose criminal liability on a successor entity, facts the jury must decide.

25

GOVERNMENT'S PROPOSED INSTRUCTION NO. 40

The Perfectus defendants, specifically, Perfectus Aluminium, Inc. and Perfectus Acquisitions, LLC, are liable for the acts taken by the other.  In addition, they are liable for the acts taken by the Perfectus predecessor entities, including Pengcheng Aluminum Enterprise, Inc.; Century American Aluminum, Inc.; Global Aluminum (USA), Inc.; American Apex Aluminum, Inc.; Aluminum Source, Inc.; Transport Aluminum, Inc.; and Aluminum Industrial, Inc.

United States v. Polizzi, 500 F.2d 856, 907 (9th Cir. 1974); United States v. Alamo Bank of Tex., 990 F.2d 828, 830 (5th Cir. 1989); . Corp. Code § 1107; Cal. Corp. Code § 17710.16; Del. Code Ann. tit. 8 § 259; United States v. Bestfoods, 524 U.S. 51, 63 (1998); United States v. Wilshire Oil Co. of Tex., 427 F.2d 969, 973-74 (10th Cir. 1970).

26

GOVERNMENT'S POSITION IN SUPPORT OF ITS PROPOSED INSTRUCTION NO. 40

Defendants object to this proposed instruction as factually inaccurate and that it seeks to stipulate to an issue of fact.  Not so.  When multiple companies merge, the surviving entity is generally liable for any of the predecessor entities past conduct. See United States v. Polizzi, 500 F.2d 856, 907 (9th Cir. 1974) (holding that the surviving entity of a corporate merger could be prosecuted for crimes committed by its predecessor entities); United States v. Alamo Bank of Tex., 990 F.2d 828, 830 (5th Cir. 1989) (holding that a corporation "cannot escape punishment by merging with [another corporation] and taking [its corporate] persona"); see also Melrose Distillers, Inc. v. United States, 359 U.S. 271, 274 (holding that dissolved corporation could still be held criminally liable for past conduct).

As the surviving entity of the Perfectus Predecessor Entities (incorporated in California), Perfectus Aluminum Acquisitions, LLC (incorporated in Delaware), would be criminally liable for the acts of the Perfectus Predecessor Entities.  See, e.g., Polizzi, 500 F.2d at 907 (federal courts look to state law to determine whether the surviving entity assumes the predecessor entities liabilities); Cal. Corp. Code § 1107; Cal. Corp. Code § 17710.16; Del. Code Ann. tit. 8 § 259.

As the parent company of Perfectus Aluminum Acquisitions, LLC, Perfectus Aluminium Inc. is criminally liable for its subsidiary's conduct because the companies were so intertwined that they were treated as a single enterprise.  See, e.g., United States v.

27

Bestfoods, 524 U.S. 51, 63 (1998); United States v. Wilshire Oil Co. of Tex., 427 F.2d 969, 973-74 (10th Cir. 1970); United States v. Johns-Manville Corp., 231 F. Supp. 690, 698 (E.D. Pa. 1963).

The criminal liability of surviving entities and parent companies is clearly a matter of law.  As such, it is clear that "the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions." United States v. Amparo, 68 F.3d 1222, 1224 (9th Cir. 1995) (quotations and citations omitted).  The government will establish the predicate facts at trial regarding Perfectus Aluminum Acquisitions, LLC, Perfectus Aluminium Inc., and the Perfectus Predecessor Entities to warrant this jury instruction.

DEFENDANTS' OBJECTION TO GOVERNMENT'S PROPOSED INSTRUCTION NO. 40

Defendants object to the government's proposed instruction as factually inaccurate in that it improperly seeks stipulation to an issue of fact where the government bears the burden of proof. *See In re Winship*, 397 U.S. 358, 364 (1970) (Due Process requires that the government provide "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.").

"A corporation is a distinct legal entity." *Loyd v. Paine Webber, Inc.*, 208 F.3d 755 (9th Cir. 2000). Here, however, the government's proposed instruction seeks to impose criminal liability across several corporate entities, blending disparate theories of liability, which do not all apply in criminal cases.

Specifically, the government fails to cite any authority for the proposition that Perfectus Aluminium, Inc. and Perfectus Acquisitions, LLC can be held liable for the acts of the other. The proposed instruction does not identify the theory underpinning such liability. Based on the government's citation to *U.S. v. Bestfoods*, 524 U.S. 51, 63 (1998), it appears the government seeks to pierce the corporate veil. In that case, brought under section 107(a)(2) of the Comprehensive Environmental Response, Compensation, and Liability ACt of 1980 (CERCLA), the Supreme Court affirmed that "when (but only when) the corporate veil may be pierced, may a parent corporation be charged with derivative CERCLA liability for its subsidiary's actions." The current criminal case does not involve CERCLA, and the government fails to cite any authority that

29

derivative liability under a piercing the corporate veil theory is appropriate in a criminal prosecution.  Further, even if the such liable is appropriate, the proposed instruction fails to advise the jury of the factual findings required to imposed such liability.

Moreover, in an attempt to impose liability on Perfectus Aluminum, Inc. and on Perfectus Acquisitions, LLC for acts allegedly taken by Pengcheng Aluminum Enterprise, Inc.; Century American Aluminum, Inc.; Global Aluminum (USA), Inc.; American Apex Aluminum, Inc.; Aluminum Source, Inc.; Transport Aluminum, Inc.; and Aluminum Industrial, Inc., the government cites to a concurring opinion in *U.S. v. Polizzi*, 500 F.2d 856, 907 (9th Cir. 1974), a citation that only speaks to liability for successor entities.  *Id.* at 907-909.  It does not purport to impose liability merely because entities may be related, or if entities share a common parent.  Likewise, the government's citations to *U.S. V. Alamo Bank of Texas*, 880 F.2d 828. 830 (5th Cir. 1989) and to *U.S. v. Wilshire Oil Co. of Tex*, 427 F.2d 969, 973-74 (10th Cir. 1970), only speaks to the criminal liability of successor entities, and not the liability of related entities. Here, the government's proposed instruction fails to identify any of the factual findings necessary to impose criminal liability on a successor entity, facts the jury must decide.

30

GOVERNMENT'S PROPOSED INSTRUCTION NO. 41A

The defendants are charged in Count 1 of the indictment with violating Section 371 of Title 18 of the United States Code in two different ways, namely, by (1) conspiring to defraud the United States by obstructing the lawful functions of U.S. Customs and Border Protection by deceitful and dishonest means; and (2) conspiring to commit specific offenses, namely, wire fraud, customs fraud, and international promotional money laundering.  The defendants need only have violated the statute in one of these ways to be guilty of this offense.

In order for a defendant to be found guilty of a conspiracy to defraud the United States, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about July 2008, and ending on or about May 7, 2019, there was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of U.S. Customs and Border Patrol by deceitful or dishonest means.

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after May 7, 2014 for the purpose of carrying out the conspiracy.

An agreement to defraud is an agreement to deceive and cheat.

31

Alternatively, the indictment also alleges the defendants violated Section 371 of Title 18 of the United States Code by conspiring to commit three specific offenses, including wire fraud, passing false and fraudulent papers through customhouse, and international promotional money laundering.

In order for the defendants to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about July 2008, and ending on or about May 7, 2019, there was an agreement between two or more persons to commit at least one crime as charged in the indictment;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after May 7, 2014 for the purpose of carrying out the conspiracy

A conspiracy is a kind of criminal partnership -- an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar

32

ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to prove that the defendant personally did one of the overt acts.

Ninth Circuit Model Criminal Jury Instructions, Nos. 8.20 and 8.21 (2010 ed.) [Conspiracy to Defraud United States and Conspiracy to Commit Offense Against United States -- Elements]

33

DEFENDANTS' PROPOSED INSTRUCTION NO. 41B

The defendants are charged in Count 1 of the indictment with violating Section 371 of Title 18 of the United States Code in four different ways, namely, by: (1) conspiring to defraud the United States by obstructing the lawful functions of U.S. Customs and Border Protection by deceitful and dishonest means through presenting unfinished aluminum products as finished goods; (2) conspiring to commit the specific offense of wire fraud against the United States; (3) conspiring to commit the specific offense of customs fraud against the United States; and (4) conspiring to commit the specific offense of international promotional money laundering against the United States.

The defendants need only have violated the statute in one of these ways to be guilty of this offense.

In order for a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about July 2008, and ending on or about May 7, 2019, there was an agreement between two or more persons to commit at least one crime as charged in the indictment; and

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after May 7, 2014 for the purpose of carrying

34

out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

An agreement to defraud is an agreement to deceive and cheat.

A conspiracy is a kind of criminal partnership -- an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed. For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit. The conspirators must have shared a unity of purpose.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a

35

conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to prove that the defendant personally did one of the overt acts.

Ninth Circuit Model Criminal Jury Instructions, No. 8.21 (2010 ed.) [Modified - Conspiracy to Defraud the United States]; Third Circuit Model Criminal Jury Instructions, No. 6.18.371A (Nov. 2018 ed.) (requiring the co-conspirators to have shared "a unity of purpose.").

GOVERNEMNT'S POSITION REGARDING PROPOSED INSTRUCTIONS

NOS. 41A AND 41B

The indictment clearly lays out a conspiracy executed by all defendants.  The conspiracy has two principal prongs:  (1) a conspiracy to defraud the US; and (2) a conspiracy to commit substantive offenses, namely, wire fraud, customs fraud, and international promotional money laundering.  One conspiracy is alleged and the evidence supports the existence of one conspiracy. In fact, the customs fraud grew out of the existing wire fraud scheme, in that when the AD/CVD orders came down, defendants had to adapt their already existing conspiracy to evade the AD/CVD orders. The government's proposed instruction No. 41A clearly lays out the ways in which defendants have been alleged to have violated the conspiracy statute and, accordingly, is the appropriate instruction.

In particular, defendants' proposed instruction no. 41B falls for a few reasons.

First, defendants try to break down the conspiracy into four separate agreements.  That is legally and factually inaccurate. There is no need for the conspiracy to be broken down into these various parts.  It is confusing and is designed to mislead the jury. For the reasons set forth herein and in the government's objection to the multiple conspiracies instruction, this extra language should be rejected by the Court.

Second, defendants try to insert the words "shared unity of purpose."  This appears nowhere in the model instruction and is unnecessary as to the elements of the offense are already explained

37

in the instruction.  The fact that is unnecessary is also highlighted by defendants' citation to the Third Circuit model instruction as support for this phrase.

Third, throughout their proposed instructions on conspiracy, defendants change the dates of the conspiracy.  There is no basis in the law or fact to do this.  For example, in defendants' proposed instructions 41B-K, the conspiracy has vastly different dates – the conspiracy to defraud lasts from July 2008 to May 7, 2019 and also from July 2008 through December 12, 2017; for the conspiracy to commit wire fraud, defendants claim it began in July 2008 and lasted until April 6, 2015; for the conspiracy to commit wire fraud, defendants claim it began in July 2008 and lasted until June 27, 2014; and for the money laundering, defendants claim it began in July 2008 and lasted until October 17, 2014.  It is entirely unclear how and why defendants decided the conspiracy as to one object began and ended.  It is particularly confusing given that the conspiracy, as alleged in the indictment, specifically lays out one conspiracy that began at least as early as July 2008 and ended in May 2019. Defendants' proposed arbitrary dates also run contrary to the facts that will be adduced at trial.  There is simply no justification for ending the conspiracy before, for example, China Zhongwang's statements disclaiming any connection to Perfecuts in 2017, defendants' lies to CBP regarding the audit of Aluminum Shapes. Defendants appear to have picked the end date based on the substantive acts charged in the indictment.  However, there is no basis in law to so limit the scope of the conspiracy.  The

substantive counts are merely executions of the crime and defendants are not able to escape liability for their criminal actions "simply because [they have been] indicted for less than all of [their] actions."   United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012 (9th Cir.1995) (some quotation marks omitted) (quoting United States v. Williams, 989 F.2d 1061, 1070 (9th Cir.1993)); see also United States v. Loftis, 843 F.3d 1173, 1177 (9th Cir. 2016)("The crime charged in a wire fraud prosecution therefore includes not only the specific executions of the scheme alleged as the second element of the offense but also the overall scheme alleged as the first element of the offense.").

As to the overt acts, the government is required to prove that one overt act occurred within the statute of limitations period. The indictment here was returned on May 7, 2019.  As such, to convict, the jury need only find that an act in furtherance of the conspiracy occurred on or after May 7, 2014.  Defendants appear to use the dates of the charged substantive offenses to restrict the overt acts.  There is no basis to do so.  The indictment alleges 98 overt acts, and overt acts 48 through 98 occurred after May 7, 2014. Any one of these overt acts are sufficient to underpin the jury's verdict on conspiracy.  Cf. United States v. Quan, 358 Fed. Appx. 854, 856-57 (9th Cir. 2009)("While it was error for the district court not to instruct the jury that the requisite overt act must have been performed within the statute of limitations period, the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings.").  Indeed, even the ones

39

alleged in the indictment do not confine the quantum of proof the government may introduce at trial.  United States v. Rizk, 660 F.3d 1125, 1132-33 (9th Cir. 2011)("The rule is well established that the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment.")

Further, defendants' arbitrary assignment of overt acts to particular objects of the conspiracy is also misplaced.  On the facts as alleged in the indictment, there is no basis upon which defendants can conclude that an act can be associated only to one object of the conspiracy; for example, the jury may very well conclude that a false statement about the sale of pallets may be in furtherance of the lies to customs as well as China Zhongwang's lies to investors.  If defendants do not believe a particular act is in furtherance of the conspiracy, they can argue that to the jury based on the evidence adduced to trial and the government can argue the opposite view.  In the end, as the instructions set forth, it is for the jury to find beyond a reasonable doubt that "one of the members of the conspiracy performed at least one overt act on or after May 7, 2014 for the purpose of carrying out the conspiracy."  Defendants also ask for specific unanimity as to the overt acts.  However, the notes to the model jury instructions dispense with any such language.  "As long as jurors agree that the government has proven each element of the conspiracy, they need not unanimously agree on a particular overt act that was committed in furtherance of the

40

agreed-upon conspiracy."  Comment to 8.20 (citing United States v. Gonzalez, 786 F.3d 714, 718-19 (9th Cir. 2015)).

41

DEFENDANTS' OBJECTION TO GOVERNMENT'S PROPOSED INSTRUCTION NO. 41A

Defendants object to this jury instruction as proposed because the government has improperly combined jury instructions numbers 8.20 and 8.21. Defendants further object to this jury instruction as proposed because it does not clearly state the four objects of the purported conspiracy, instead combining them into a single instruction. *See United States v. Wardell*, 591 F.3d 1279, 1288 (10th Cir. 2009) (there must be evidence suggesting an understanding among conspirators "to accomplish the objects of the conspiracy."). That these combined four objects are presented in an "in the alternative" format makes the government's proposed instruction even more likely to cause jury confusion.

Because the government is required to prove that Defendants pursued an object of the conspiracy as a common goal, the jury must reach agreement on the specific, shared object that Defendants purportedly pursued together. In short, evidence that one Defendant pursued an object while another Defendant pursued a different object is inadequate. *See United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977) ("The law of conspiracy requires agreement as to the 'object' of the conspiracy."); *United States v. Krasovich*, 819 F.2d 253, 255 (9th Cir. 1987) ("Not only must the government prove knowledge of the illegal objective, it must also prove an agreement with a co-conspirator to pursue that objective as a common one . . . Thus, in the absence of any proof that the defendant knew of [the separate] objective of an alleged co-conspirator, there can be no

42

adequate proof of an agreement to pursue that objective.") (citing *Rosenblatt*, 554 F.2d at 36).

Moreover, the government's proposed instruction improperly groups the dates of the overt acts for each purported object. Per the Indictment, each object of the conspiracy is tied to a distinct set of overt acts with a distinct timeline. *See* Indictment, at ¶ 34 (alleging overt acts from July 2008 to December 12, 2017 under Count One, with the first overt falsification of Form 7501 on May 5, 2014); ¶ 38 (alleging overt acts from May 13, 2014 to April 6, 2015 under Counts Two to Ten); ¶ 40 (alleging overt acts from May 19, 2014 to June 27, 2014 under Counts Eleven to Seventeen); ¶ 42 (alleging overt acts from June 5, 2014 to October 17, 2014 under Counts Eighteen to Twenty-Four). Defendants object to the government's proposed dates on when the first overt act occurred and when the conspiracy ended for each object of the conspiracy as being inconsistent with the Indictment.

For the conspiracy to defraud the United States, the first purported overt falsification of Form 7501 occurred on May 5, 2014. The last overt act alleged under Count One of the Indictment occurred on December 12, 2017. *See, e.g., United States v. Hung Van Tieu*, 2014 WL 814053, at *4 (C.D. Cal. Feb. 27, 2014) ("The Government's reliance on evidence of an agreement that post-dates the end of the conspiracy charged in the Indictment to prove that an agreement existed earlier is misplaced. That evidence is insufficient to sustain a conviction on the conspiracy count charged in the Indictment."); *see also Gulbranson v. Duluth, Missabe and Iron Range Ry. Co.*, 921

43

F.2d 139, 142 (9th Cir. 1990) (excluding meeting minutes as irrelevant under Rule 401 because they tended to reflect knowledge from eight months after the event in question). Thus, the proposed instruction overstates the duration of the charge conspiracy.

As for the conspiracy to commit wire fraud, Defendants object on the same grounds. The first purported instance of wire fraud occurred on May 13, 2014. The last overt act alleged under Count Two through Ten of the indictment occurred on April 6, 2015.

As for the conspiracy to commit customs fraud, Defendants object on the same grounds. The first purported instance of customs fraud occurred on May 19, 2014. The last overt act alleged under Count Eleven through Seventeen of the indictment occurred on June 27, 2014.

As for the conspiracy to commit international promotional money laundering, Defendants object on the same grounds. The first purported instance of international promotional money laundering occurred on June 5, 2014. The last overt act alleged under Counts Eighteen through Twenty Four of the indictment occurred on October 17, 2014.

Defendants' proposed instructions clearly delineate each object for the jury rather than grouping them under a single, confusing instruction. Furthermore, Defendants' proposed instructions more accurately explain each object of the conspiracy, the relevant dates for each object, and the agreement necessary to pursue that object.

44

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PROPOSED INSTRUCTION NO. 41B

Defendants' proposed instruction delineates each object for the jury to make clear that there are four, separate purported objects of the conspiracy: (1) conspiring to defraud the United States by obstructing the lawful functions of U.S. Customs and Border Protection by deceitful and dishonest means through presenting unfinished aluminum products as finished goods; (2) conspiring to commit the specific offense of wire fraud against the United States; (3) conspiring to commit the specific offense of customs fraud against the United States; and (4) conspiring to commit the specific offense of international promotional money laundering against the United States.  As for the first object, Defendants have added language specifying the government's theory on how Defendants allegedly conspired to obstruct the lawful functions of U.S. Customs and Border Protection.

Defendants' proposed instruction also includes the addition of language noting that "[t]he conspirators must have shared a unity of purpose."  This addition reflects the requirement that Defendants must have agreed to pursue a common object.  *See United States v. Krasovich*, 819 F.2d 253, 255 (9th Cir. 1987) ("Not only must the government prove knowledge of the illegal objective, it must also prove an agreement with a co-conspirator to pursue that objective as a common one . . . Thus, in the absence of any proof that the defendant knew of [the separate] objective of an alleged co-

45

conspirator, there can be no adequate proof of an agreement to pursue that objective.").

DEFENDANTS' PROPOSED INSTRUCTION NO. 41C

In this instance, with regard to the alleged conspiracy, the Indictment charges that the Defendants conspired to commit four separate, substantive crimes or offenses.

In such a case it is not necessary for the government to prove that the defendants willfully conspired to commit *all* of those substantive offenses.  It would be sufficient if the government proves, beyond a reasonable doubt, that the defendants willfully conspired with someone to commit *one* of those offenses.

You will be provided with what is known as a "special verdict form" that will ask you to state which objective or objectives charged in the conspiracy count, if any, you find were agreed to by the conspirators.  If you find that the government has proved each of the elements of a conspiracy charge beyond a reasonable doubt, you will then indicate which objective or objectives you find were agreed to by the conspirators in that conspiracy.  All jurors must agree unanimously before you find that any objective alleged in Count One was in fact an objective of that conspiracy.

11th Cir. Pattern Jury Instruction No. 13.2 (2020 ed.) [Modified – Multiple Objects of a Conspiracy – For Use With General Conspiracy Charge 13.1]; *see United States v. Manarite*, 44 F.3d 1407, 1414 (9th Cir. 1995) (reversing conspiracy convictions where lack of special verdict form left uncertain the basis of the convictions), *cert. denied*, 515 U.S. 1158 (1995).

47

GOVERNMENT'S POSITION WITH REGARD TO DEFENDANTS'

PROPOSED INSTRUCTION NO. 41C

Defendants ask for a lengthy instruction about a special verdict form.  There is no need for the special verdict form or the instruction.  The case cited by defendants is inapposite.  There, the Ninth Circuit found that, as a matter of law, the objects of the conspiracy could not be legally made, and, as such, the lack of a special verdict form made it impossible for the Circuit to be sure that the conspiracy verdict should be upheld.  United States v. Manarite, 44 F.3d 1407, 1414 (9th Cir. 1995).  Here, the Court has already rejected defendants' motion to dismiss for failure to state offenses.  As such, there is no need for a special verdict form, because the Court has already found the indictment properly alleges offenses.  Even if the jury or the Court were to find a lack of sufficient evidence to convict at the conclusion of the evidence, a special verdict form is still not required.  Griffin v. United States, 502 U.S. 46, 59 (1991); see United States v. Gonzalez, 906 F.3d 784, 791 (9th Cir. 2018)("We did not hold [in Manarite]—and indeed, in light of Griffin, could not have held—that the defendants were entitled to reversal of their convictions because the evidence was insufficient to prove the charged conduct itself.")

48

DEFENDANTS'MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PROPOSED

INSTRUCTION NO. 41C

A special verdict form may be necessary where, as here, a single charge of conspiracy has multiple objects, creating the possibility that a jury could acquit of some charges but not others. *See United States v. Manarite*, 44 F.3d 1407, 1414 (9th Cir. 1995) (reversing conspiracy convictions where lack of special verdict form left uncertain the basis of the convictions), *cert. denied*, 515 U.S. 1158 (1995).  Indeed, other Circuits have found that where a single conspiracy charge includes multiple objects, the jury must reach agreement on which of the objects defendants conspired to commit to ensure a unanimous verdict.  *See United States v. Ballard*, 663 F.2d 534, 544 (5th Cir. 1981), reh'g denied and opinion modified, 680 F.2d 352 (5th Cir. 1982) (where "different jurors could have based guilty verdicts on differing portions of the charge," making it impossible to determine which portions of the charge sustained the verdict, defendant was deprived of a unanimous jury verdict); *see also* Comment to 11th Cir. Pattern Jury Instruction No. 13.2.

49

DEFENDANTS' PROPOSED INSTRUCTION NO. 41D

In order for a defendant to be found guilty of a conspiracy whose object is to defraud the United States through presenting unfinished aluminum products as finished goods, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about July 2008, and ending on or about December 12, 2017, there was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of U.S. Customs and Border Patrol by deceitful or dishonest means through presenting unfinished aluminum products as finished goods.

Second, the defendant became a member of the conspiracy knowing of the object to defraud the United States through presenting unfinished aluminum products as finished goods and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after May 5, 2014 for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

Ninth Circuit Model Criminal Jury Instructions, No. 8.21 (2010 ed.) [Modified - Conspiracy to Defraud the United States].

50

GOVERNMENT'S POSITION REGARDING DEFENDANTS'

PROPOSED INSTRUCTION NO. 41D

Again, defendants' proposed instruction is superfluous and unnecessarily confusing.  The requisite elements are already covered by the government's proposed instruction no. 41A.  Further, defendants' proposed instruction is erroneous and improperly invades the province of the jury by assigning arbitrary dates to the beginning and end of the conspiracy and to the overt acts.  The proposed instruction also inserts entirely unnecessary language about finished merchandise.  The conspiracy to defraud the United States is adequately covered by the Government's Proposed Instruction No. 41A and thus, no supplemental instruction is necessary.

51

DEFENDANTS'MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PROPOSED

INSTRUCTION NO. 41D

Defendants' proposed instruction more clearly explains the first object of the alleged conspiracy for the jury—that Defendants purportedly conspired to defraud the United States by obstructing the lawful functions of U.S. Customs and Border Protection by deceitful and dishonest means.  Defendants' proposed instruction specifies: (1) the government's theory that the specific deceitful and dishonest means used by Defendants was presenting unfinished aluminum products as finished goods; (2) the dates on which the agreement to defraud the United States purportedly began and ended; (3) that Defendants must have joined the conspiracy knowing of this particular object and intending to help accomplish it; and (4) that one of the members of the conspiracy must have performed at least one overt act on or after May 5, 2014—the date of the first alleged falsification of Form 7501.  Defendants' proposed language more closely tracks the factual allegations of the Indictment.  *See* Indictment, at ¶ 34 (alleging overt acts from July 2008 to December 12, 2017 under Count One, with the first overt falsification of Form 7501 on May 5, 2014).

52

DEFENDANTS' PROPOSED INSTRUCTION NO. 41E

In order for a defendant to be found guilty of a conspiracy whose object is to defraud the United States through presenting unfinished aluminum products as finished goods, the government must prove beyond a reasonable doubt that that defendant had an agreement with one or more individuals.  The agreement must have been to defraud the United States, which consists of the following elements:

First, the agreement was to interfere with or obstruct a lawful governmental function by deceit, craft, or trickery; and

Second, the agreement was to cheat the government out of property or money.

*Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924) ("To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest."); *see also Shaw v. United States*, 137 S. Ct. 462, 469 (2016) (under the bank fraud statute, a scheme to defraud must be one to "deceive the bank and deprive it of something of value.")

53

GOVERNMENT'S POSITION ON DEFEDANTS' PROPOSED INSTRUCTION NO. 41E

The Government's Proposed Instruction No. 41A sufficiently defines (in accord with the model instructions) the intent to defraud.  Specifically, it states the intent to defraud and cheat.  There is no need to define this further.  More problematic, however, is that defendants' proposed instruction is an incorrect statement of the law.  Defendants' proposed language conveniently skips over the complete language from the very case they cite.  In Hammerschmidt v. United States, 265 U.S. 182, 188 (1924), the Supreme Court did say, as defendants cite, that "To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest."  What defendants' fail to cite is the next sentence which reads:  "It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention."  Id. (emphasis added); see also United States v. Caldwell, 989 F.2d 1056, 1058-59 (9th Cir. 1993)(overruled on other grounds)("The conspiracy need not aim to deprive the government of property. . . . It need not involve any detrimental reliance by the government.")  Shaw v. United States, 137 S. Ct. 462, 469 (2016), which analyzed the bank fraud statute, did not change this definition.  In fact, it is well settled that defraud in

54

the context of a conspiracy to defraud the US is broader than its use in other statutes.  <u>Caldwell</u>, 989 F.2d at 1058-59 ("While this seems to cover only defrauding in the normal sense of the word—acquiring another's property by intentional misrepresentations—the word "defraud" has been read much more broadly.").

55

DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS'

PROPOSED INSTRUCTION NO. 41E

Defendants' proposed instruction explains that if there was a conspiracy to defraud the United States, Defendants must have had an agreement to do so.  *See United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977) ("The law of conspiracy requires agreement as to the 'object' of the conspiracy."); *United States v. Krasovich*, 819 F.2d 253, 255 (9th Cir. 1987) ("Not only must the government prove knowledge of the illegal objective, it must also prove an agreement with a co-conspirator to pursue that objective as a common one . . . Thus, in the absence of any proof that the defendant knew of [the separate] objective of an alleged co-conspirator, there can be no adequate proof of an agreement to pursue that objective.") (citing *Rosenblatt*, 554 F.2d at 36).

Defendants' proposed instruction also defines the elements of defrauding the United States.  Defrauding the United States here means to interfere with or obstruct a lawful governmental function by deceit, craft, or trickery, and to cheat the government out of property or money.  *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924).  The government's proposed instructions generally allude to this standard, but provide limited explanation of what it means to defraud the United States.  *See* Government's Proposed Instruction No. 38 ("An agreement to defraud is an agreement to deceive and cheat."); *see also* Government's Proposed Instruction No. 42 ("An intent to defraud is an intent to deceive and cheat.").  Defendants'

56

proposed instruction more clearly explains the elements of the offense of defrauding the United States.

57

DEFENDANTS' PROPOSED INSTRUCTION NO. 41F

In order for a defendant to be found guilty of a conspiracy whose object is to violate Section 371 of Title 18 of the United States Code by wire fraud, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about July 2008, and ending on or about April 6, 2015, there was an agreement between two or more persons to commit wire fraud;

Second, the defendant became a member of the conspiracy knowing of the object to commit wire fraud and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after May 13, 2014 for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

Ninth Circuit Model Criminal Jury Instructions, Nos. 8.21 (2010 ed.)

[Modified - Conspiracy to Defraud the United States]

58

GOVERNMENT'S OMNIBUS POSITION WITH REGARD TO DEFENDANTS' PROPOSED INSTRUCTIONS NOS. 41F THROUGH 41L

Again, defendants' proposed instructions are superfluous and unnecessarily confusing.  It is erroneous and improperly invading the province of the jury to assign arbitrary dates to the beginning and end of the conspiracy and to the overt acts.  Furthermore, there is no reason to again read the elements of the substantive offenses. The parties have submitted an undisputed jury instruction on wire fraud, customs fraud, and international promotional money laundering.  If the elements of the objects of the conspiracy are otherwise read, they do not need to be repeated in the conspiracy instruction.  Comments to Model Instruction No. 8.20 ("With respect to the first element in this instruction, if other jury instructions do not set out the elements of the crimes alleged to be objects of the conspiracy, the elements must be included in this or an accompanying instruction. United States v. Alghazouli, 517 F.3d 1179, 1189 (9th Cir. 2008). Nevertheless, conspiracy to commit a crime "does not require completion of the intended underlying offense."  United States v. Iribe, 564 F.3d 1155, 1160-61 (9th Cir. 2009).).  To do so would waste time and be unduly confusing.  Also, for the reasons set in the government's opposition to defendants' Proposed Instruction No. 46, the intent to deceive and cheat is inaccurately defined in defendants' proposed instruction.

59

DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS'

PROPOSED INSTRUCTION NO. 41F

Defendants' proposed instruction more clearly explains the second object for the jury—that Defendants purportedly conspired to commit wire fraud.  Defendants' proposed instruction specifies: (1) the dates on which the agreement to commit wire fraud purportedly began and ended; (2) that Defendants must have joined the conspiracy knowing of this particular object and intending to help accomplish it; and (3) that one of the members of the conspiracy must have performed at least one overt act on or after May 13, 2014—the date of the first alleged email sent from an employee of Defendant China Zhongwang Holdings Limited to Defendant Xiang Chun ("Johnson") Shao in the Central District of California asking for payment of aluminum.  Defendants' proposed language more closely tracks the factual allegations of the Indictment.  *See* Indictment, at ¶ 38 (alleging overt acts from May 13, 2014 to April 6, 2015 under Counts Two to Ten).

DEFENDANTS' PROPOSED INSTRUCTION NO. 41G

In order for a defendant to be found guilty of a conspiracy whose object is to commit wire fraud, in violation of Section 1343 of Title 18 of the United States Code, the government must prove beyond a reasonable doubt that that defendant had an agreement with one or more individuals.  The agreement must have been to commit wire fraud, which consists of the following elements:

First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts. Deceitful statements of half-truths may constitute false or fraudulent representations;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

There is a difference between an intent to deceive and an intent to cheat.  An intent to deceive requires a defendant to make false statements or utilize other forms of deception.  An intent to cheat requires a defendant to deprive a victim of money or property

61

by means of those deceptions.  Here, both an intent to deceive and an intent to cheat are required.

In determining whether a scheme to defraud exists, you may consider not only the defendant's words and statements, but also the circumstances in which they are used as a whole.

To convict a defendant of wire fraud based on the omissions of a material fact, you must find that defendant had a duty to disclose the omitted fact arising out of a relationship of trust. That duty can arise either out of a formal fiduciary relationship, or an informal, trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise.

A wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use.

//

//

62

It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate or foreign in nature. Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate or foreign wire communication must have actually occurred in furtherance of the scheme.

Ninth Circuit Model Criminal Jury Instructions, Nos. 8.124 and 8.21 (2010 ed.) [Wire Fraud – Elements; Modified - Conspiracy to Defraud the United States]; *United States v. Miller*, 953 F.3d 1095, 1101-03 (9th Cir. 2020) ("It follows that to be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat.") (emphasis in original); *see also Shaw v. United States*, 137 S. Ct. 462, 469 (2016) (under the bank fraud statute, 18 U.S.C. § 1344(1), a scheme to defraud must be one to "deceive the bank *and* deprive it of something of value") (emphasis in original).

63

DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS'

PROPOSED INSTRUCTION NO. 41G

Defendants' proposed instruction explains that if there was a conspiracy to commit wire fraud, Defendants must have had an agreement to do so.  *See United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977) ("The law of conspiracy requires agreement as to the 'object' of the conspiracy."); *United States v. Krasovich*, 819 F.2d 253, 255 (9th Cir. 1987) ("Not only must the government prove knowledge of the illegal objective, it must also prove an agreement with a co-conspirator to pursue that objective as a common one . . . Thus, in the absence of any proof that the defendant knew of [the separate] objective of an alleged co-conspirator, there can be no adequate proof of an agreement to pursue that objective.") (citing *Rosenblatt*, 554 F.2d at 36).

Defendants' proposed instruction also includes language explaining the difference between an intent to deceive and an intent to cheat, and that both are required here.  *See United States v. Miller*, 953 F.3d 1095, 1101-03 (9th Cir. 2020) ("It follows that to be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat.") (emphasis in original); *see also Shaw v. United States*, 137 S. Ct. 462, 469 (2016) (under the bank fraud statute, 18 U.S.C. § 1344(1), a scheme to defraud must be one to "deceive the bank *and* deprive it of something of value") (emphasis in original).

The government's proposed instruction merely states that a defendant must have acted with the intent to defraud, "that is, the intent to deceive and cheat" without explaining that there is a difference between these two terms.  *See* Government's Proposed Instruction No. 42.  Defendants' proposed instruction explains that an intent to deceive is one to "make false statements or utilize other forms of deception," whereas an intent to cheat is to "deprive a victim of money or property by means of those deceptions, " and more accurately explains the difference between these terms.

DEFENDANTS' PROPOSED INSTRUCTION NO. 41H

In order for a defendant to be found guilty of a conspiracy whose object is to violate Section 371 of Title 18 of the United States Code by passing false and fraudulent papers through customhouse, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about July 2008, and ending on or about June 27, 2014, there was an agreement between two or more persons to pass false and fraudulent papers through customhouse;

Second, the defendant became a member of the conspiracy knowing of the object to pass false and fraudulent papers through customhouse and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after May 19, 2014 for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

Ninth Circuit Model Criminal Jury Instructions, Nos. 8.20 and 8.21 (2010 ed.) [Modified - Conspiracy and Conspiracy to Defraud the United States]

66

DEFENDANTS' MEMORANDUM IN SUPPORT OF

DEFENDANTS' PROPOSED INSTRUCTION NO. 41H

Defendants' proposed instruction more clearly explains the third object for the jury—that Defendants purportedly conspired to commit customs fraud.  Defendants' proposed instruction specifies: (1) the dates on which the agreement to commit customs fraud purportedly began and ended; (2) that Defendants must have joined the conspiracy knowing of this particular object and intending to help accomplish it; and (3) that one of the members of the conspiracy must have performed at least one overt act on or after May 19, 2014—the date of the first Form 7501 purportedly falsely declaring that aluminum pallets were not subject to the 2011 AD/CVD Orders.  Defendants' proposed language more closely tracks the factual allegations of the Indictment.  *See* Indictment, at ¶ 40 (alleging overt acts from May 19, 2014 to June 27, 2014 under Counts Eleven to Seventeen).

67

DEFENDANTS' PROPOSED INSTRUCTION NO. 41I

In order for a defendant to be found guilty of a conspiracy whose object is to pass false and fraudulent papers through a customhouse, in violation of Section 545 of Title 18 of the United States Code, the government must prove beyond a reasonable doubt that that defendant had an agreement with one or more individuals. The agreement must have been to pass false and fraudulent papers through a customhouse, which consists of the following elements:

First, the defendant knowingly passed a document, specifically a CBP Form 7501, through a customhouse of the United States;

Second, the defendant knew that the CBP Form 7501 was false or fraudulent;

Third, the defendant acted willfully with intent to defraud the United States; and

Fourth, the CBP Form 7501 had a natural tendency to influence, or was capable of influencing, action by the United States.

Ninth Circuit Model Criminal Jury Instructions, Nos. 8.36 and 8.21 (2010 ed.) [Passing False Documents Through Customhouse – Elements; Modified - Conspiracy to Defraud the United States]

68

DEFENDANTS' MEMORANDUM IN SUPPORT OF

DEFENDANTS' PROPOSED INSTRUCTION NO. 41I

Defendants' proposed instruction explains that if there was a conspiracy to commit customs fraud, Defendants must have had an agreement to do so. *See United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977) ("The law of conspiracy requires agreement as to the 'object' of the conspiracy."); *United States v. Krasovich*, 819 F.2d 253, 255 (9th Cir. 1987) ("Not only must the government prove knowledge of the illegal objective, it must also prove an agreement with a co-conspirator to pursue that objective as a common one . . . Thus, in the absence of any proof that the defendant knew of [the separate] objective of an alleged co-conspirator, there can be no adequate proof of an agreement to pursue that objective.") (citing *Rosenblatt*, 554 F.2d at 36).

69

DEFENDANTS' PROPOSED INSTRUCTION NO. 41J

In order for a defendant to be found guilty of a conspiracy whose object is to violate Section 371 of Title 18 of the United States Code by international promotional money laundering, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about July 2008, and ending on or about October 17, 2014, there was an agreement between two or more persons to commit international promotional money laundering;

Second, the defendant became a member of the conspiracy knowing of the object to commit international promotional money laundering and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after June 5, 2014 for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

Ninth Circuit Model Criminal Jury Instructions, No. 8.21 (2010 ed.) [Modified - Conspiracy to Defraud the United States]

70

DEFENDANTS' MEMORANDUM IN SUPPORT OF

DEFENDANTS' PROPOSED INSTRUCTION NO. 41J

Defendants' proposed instruction more clearly explains the fourth object for the jury—that Defendants purportedly conspired to commit international promotional money laundering.  Defendants' proposed instruction specifies: (1) the dates on which the agreement to commit international promotional money laundering purportedly began and ended; (2) that Defendants must have joined the conspiracy knowing of this particular object and intending to help accomplish it; and (3) that one of the members of the conspiracy must have performed at least one overt act on or after June 5, 2014—the date of the first purported wire transfer from Rainbow Bright Inc. Limited to PCA Account 9191.  Defendants' proposed language more closely tracks the factual allegations of the Indictment.  *See* Indictment, at ¶ 42 (alleging overt acts from June 5, 2014 to October 17, 2014 under Counts Eighteen to Twenty-Four).

DEFENDANTS' PROPOSED INSTRUCTION NO. 41K

In order for a defendant to be found guilty of a conspiracy whose object is to commit international promotional money laundering, in violation of Section 1956(a)(2)(A) of Title 18 of the United States Code, the government must prove beyond a reasonable doubt that that defendant had an agreement with one or more individuals. The agreement must have been to commit international promotional money laundering, which consists of the following elements:

First, the defendant transported or intended to transport money to a place in the United States from or through a place outside the United States; and

Second, the defendant acted with the intent to promote the carrying on of wire fraud, in violation of Section 1343 of Title 18 of the United States Code, or passing false or fraudulent papers through a customshouse, in violation of Section 545 of Title 18 of the United States Code, with all of you agreeing to whether the defendant intended to promote the carrying on of wire fraud or passing false or fraudulent papers through a customhouse, or both.

Ninth Circuit Model Criminal Jury Instructions, Nos. 8.148 and 8.21 (2010 ed.) [International Promotional Laundering – Elements; Modified – Conspiracy to Defraud the United States]

72

DEFENDANTS' MEMORANDUM IN SUPPORT OF

DEFENDANTS' PROPOSED INSTRUCTION NO. 41K

Defendants' proposed instruction explains that if there was a conspiracy to commit customs fraud, Defendants must have had an agreement to do so. *See United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977) ("The law of conspiracy requires agreement as to the 'object' of the conspiracy."); *United States v. Krasovich*, 819 F.2d 253, 255 (9th Cir. 1987) ("Not only must the government prove knowledge of the illegal objective, it must also prove an agreement with a co-conspirator to pursue that objective as a common one . . . Thus, in the absence of any proof that the defendant knew of [the separate] objective of an alleged co-conspirator, there can be no adequate proof of an agreement to pursue that objective.") (citing *Rosenblatt*, 554 F.2d at 36).

73

DEFENDANTS' PROPOSED INSTRUCTION NO. 41L

You must decide whether the conspiracy charged in the indictment existed, and, if it did, who at least some of its members were. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed. Similarly, if you find that any defendant was not a member of the charged conspiracy, then you must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy.

Ninth Circuit Model Criminal Jury Instructions, No. 8.22 [Multiple Conspiracies]

74

GOVERNMENT'S POSITION REGARDING DEFENDANTS'

PROPOSED INSTRUCTION NO. 41L

Defendants request that the Court instruct the jury on multiple conspiracies. This request is premature.  In the Ninth Circuit, a "multiple conspiracies instruction is required only if the defendants' theory of the charged conspiracy or conspiracies is supported by law and has some foundation in the evidence." United States v. Job, 871 F.3d 852, 867 (9th Cir. 2017) (internal quotations omitted) (quoting United States v. Fernandez, 388 F.3d 1199, 1247 (9th Cir. 2004)). To be entitled to a multiple conspiracies instruction, the proof at trial must indicate that "a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." United States v. Torres, 869 F.3d 1089, 1101 (9th Cir. 2017) (emphasis added).

Further, Ninth Circuit precedent is clear that sub-agreements or sub-groups do not, without more, amount to separate conspiracies. United States v. Singh, 979 F.3d 697, 722 (9th Cir. 2020) ("a single conspiracy may involve several subagreements or subgroups of conspirators."); United States v. Mincoff, 574 F.3d 1186, 1196-97 (9th Cir. 2009) ("It is irrelevant that [seller's] suppliers and [defendant's] buyers did not know each other or may not have been aware of every act committed in furtherance of the conspiracy, because a single conspiracy can include subgroups or subagreements.") (internal quotations omitted); Job, 871 F.3d at 868 (same); Fernandez, 388 F.3d at 1248 n.34 (same). Thus, to "suggest

75

that defendants should be acquitted of the general conspiracy charge just because some of them met singly with other defendants and conspired with them to carry out the overall . . . plan is a misapplication of the law of conspiracy." United States v. Perry, 550 F.2d 524, 533 (9th Cir. 1977) (citation omitted).

In this case, unless the proof at trial indicates that the defendants were (1) only part of a separate conspiracy that (2) was unrelated to the overall conspiracy charged in the indictment, the Court should not give this instruction. Torres, 869 F.3d at 1102 (affirming denial of multiple conspiracy instruction where defendant "did not adduce any testimony or other evidence at trial that undercut the government's evidence regarding [defendant's] activities in furtherance of [charged conspiracy's] objectives"); Moe, 781 F.3d at 1129 ("multiple conspiracy theory of defense did not apply . . . [where evidence] did not tend to disprove the possibility of the alleged conspiracy").

76

DEFENDANTS' MEMORANDUM IN SUPPORT OF

DEFENDANTS' PROPOSED INSTRUCTION NO. 41L

Defendants' proposed instruction provides for the possibility that, based on the evidence and theories offered by the government, the jury could find that no conspiracy exists or that multiple conspiracies exist.  *See* Comment to Ninth Circuit Model Criminal Jury Instruction No. 8.22 ("Use this instruction when the indictment charges a single conspiracy and the evidence indicates two or more possible conspiracies.").  *See also United States v. Perry*, 550 F.2d 524, 533 (9th Cir. 1997) ("When the possibility of a variance appears between the indictment and the trial proof, the trial court should instruct the jury on multiple conspiracies.").

77

DEFENDANTS' PROPOSED INSTRUCTION NO. 41M

When two or more persons knowingly associate themselves together to carry out a common plan or arrangement and intend either to accomplish some unlawful purpose or to accomplish some lawful purpose by unlawful means, there arises from that association a kind of partnership in which each member becomes the agent of every other member.

So if you find that the evidence in the case shows such a common plan or arrangement, then an act knowingly done or a statement knowingly made by a member, while the common plan or arrangement is continuing and in furtherance of some object or purpose thereof, is admissible against all of the members. In order to establish that such a common plan or arrangement existed, the evidence must show that the parties to the plan or arrangement in some way or manner came to a mutual understanding to accomplish some common object or purpose.

In order to establish that a defendant or any other person was a party to or a member of such a common plan or arrangement, the evidence must show that the plan was knowingly formed and that the defendant, or other person who is alleged to have been a member of it, knowingly participated in it intending to advance or further some common object or purpose of the plan or arrangement.

In determining whether or not a defendant or any other person was a party to or a member of such a common plan or arrangement, the jury is not to consider what others may have said or done. The membership of a defendant or any other person in such a common plan

78

or arrangement, in other words, must be established by evidence as to his own conduct, what he himself knowingly said or did. If, and only if, it appears from such evidence in the case that a common plan or arrangement did exist, and that a defendant was one of the members of the plan or arrangement, then the acts and statements by any person likewise found to be a member may be considered by the jury as evidence in the case as to the defendant found to have been a member. This is true even though the acts and statements may have occurred in the absence of and without the knowledge of the defendant, provided that such acts and statements were knowingly done or knowingly made during the existence of the common plan or arrangement and in furtherance of some intended object or purpose of the plan or arrangement.

Otherwise any admission or incriminatory statement made or act done by one person outside of court may not be considered as evidence against any person who was not present and saw the act done or heard the statement made.

O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, Vol. 1A, § 18.02 (6th ed. 2021) [Common scheme or plan—Evidence of acts or declarations of confederates]

GOVERNMENT'S POSITION ON DEFENDANTS' PROPOSED INSTRUCTION NO. 41M

Citing O'Malley, the defendants request an instruction on coconspirator statements that is inconsistent with Ninth Circuit law. For example, the core of the instruction provides:

> In determining whether or not a defendant or any other person was a party to or a member of such a common plan or arrangement, the jury is not to consider what others may have said or done. The membership of a defendant or any other person in such a common plan or arrangement, in other words, must be established by evidence as to his own conduct, what he himself knowingly said or did.

The Ninth Circuit has previously formed the opposite conclusion. In United States v. Giese, 597 F.2d 1170 (9th Cir. 1979), the court approved an instruction that read "in determining whether or not a particular defendant was a member of the conspiracy, you may . . . consider and weigh the acts and declarations of other co-conspirators which were made during the course of the conspiracy and in furtherance of it, as bearing on the question of a defendant's membership in the conspiracy." Id. at 1197-98 (emphasis added).

Further, the defendant's proposed instruction contradicts the corporate liability instruction, which tells the jury that they can impute the actions of the corporation's agents to the entity itself, a concept on which both the government and defense agree. E.g., Def. Proposed Instruct. 36 ("A corporation can act only through its agents—that is, its directors, officers, employees, and other

80

persons authorized to act for it . . . If an agent was acting within the scope of his employment, the fact that the agent's act was illegal, contrary to his employer's instructions or against the corporation's policies will not relieve the corporation of responsibility for it.").

Finally, the last paragraph of the proposed instruction is confusing and appears to be legally incorrect.  Under Federal Rule of Evidence 802(d)(2)(E), coconspirator statements that are made in furtherance of the conspiracy are generally admissible against the defendant. United States v. Bowman, 215 F.3d 951, 960-61 (9th Cir. 2000) ("Under Rule 801(d)(2)(E), the statement of a co-conspirator is admissible against the defendant if the government shows by a preponderance of the evidence that a conspiracy existed at the time the statement was made; the defendant had knowledge of, and participated in, the conspiracy; and the statement was made in furtherance of the conspiracy.").  Whether the evidence is admissible is determined by the Court and not the jury.  Further, this instruction, cabined only by the vague modifier "otherwise," broadly states that any incriminating out-of-court statement "may not be considered as evidence against any person who was not present and saw the act done or heard the statement made," which is inharmonious with the Federal Rules of Evidence or Ninth Circuit law.

DEFENDANTS' MEMORANDUM IN SUPPORT OF

DEFENDANTS' PROPOSED INSTRUCTION NO. 41M

Defendants' proposed instruction clarifies that the membership of a defendant in any common plan or arrangement must be established by evidence as to his own conduct.  The proposed instruction also explains that the threshold requirements of a common plan or arrangement and a defendant's membership in that common plan or arrangement must be met *before* any co-conspirator acts or statements can be considered by the jury as evidence in the case against that defendant.  *See United States v. Guillett*e, 547 F.2d 743, 751 (2d Cir. 1976) (finding no issue with an instruction stating that a defendant "must in some way indicate or show that he is going along with this (conspiracy), that he is in on it, that he is a part of this arrangement, that he adopts this plan as his own and that he is going to promote it . . . as his own, and that he has a stake in its outcome" because it explained that before the jury could find a defendant a member of the conspiracy, "it must be convinced of his affirmative embracing of the unlawful objectives and his intent to achieve those objectives.").  Given the complexity of the alleged conspiracy here, Defendants' proposed instruction is necessary to explain to the jury that establishing the existence of a common plan or arrangement *and* a defendant's membership in that common plan or arrangement must be met before a co-conspirator's statements are considered as evidence against a defendant.

82

GOVERNMENT'S PROPOSED INSTRUCTION NO. 43

A conspiracy may be proven by circumstantial evidence and may exist without a formal agreement. The elements may therefore be established by evidence of coordinated activities between the conspirators.

In determining whether the defendant was a member of a charged conspiracy, you may consider and weigh all of the evidence presented at trial, including, without limitation, a defendant's own conduct and actions, a defendant's own statements and declarations, and the acts and statements of other alleged co-conspirators that were made during the course of the conspiracy and in furtherance of it.

United States v. Ortega, 203 F.3d 675, 683 (9th Cir. 2000) ("A conspiracy may be proven by circumstantial evidence."); United States v. Kiriki, 756 F.2d 1449, 1453 (9th Cir. 1985) ("The agreement need not be explicit, but may be inferred from circumstantial evidence."); Davenport v. United States, 260 F.2d 591, 598 (9th Cir. 1958) ("The offense of conspiracy . . . can rarely be proved by direct evidence."); United States v. Giese, 597 F.2d 1170, 1197-98 (9th Cir. 1979) (approving language similar to the last sentence of this proposed instruction).

83

GOVERNMENT'S POSITION IN SUPPORT OF ITS PROPOSED INSTRUCTION NO. 43

The Government's Proposed Instruction No. 43 is an accurate statement of the law.  Defendants claim that the instruction somehow removes the government's requirement to prove that there was an agreement between the co-conspirators.  Defendants are wrong.  The relevant inquiry when reviewing jury instructions is whether "as a whole [they] are misleading or inadequate to guide the jury's deliberation."  United States v. Hofus, 598 F.3d 1171, 1174 (9th Cir. 2010)(quoting United States v. Frega, 179 F.3d 793, 806 n.16 (9th Cir. 1999).)   Here, proposed instruction No. 38 repeatedly makes clear that the government must prove beyond a reasonable doubt that there was an agreement.  Proposed Instruction 40 does not dispense with that requirement.  Rather, it makes clear to the jury that the government is not required to prove the agreement was a formal one, like one in writing. Indeed, the Ninth Circuit has held that "[p]roof of a formal agreement is very uncommon given that 'most conspiracies are clandestine in nature.'"  United States v. Ortega, 203 F.3d 675, 683 (9th Cir. 2000).  For this reason, the Ninth Circuit has held that "[j]urors can infer whether an agreement existed from the defendants' conduct."  Id.   As such, the instruction will assist the jury in evaluating the evidence as properly proscribed by the Ninth Circuit.

DEFENDANTS' OBJECTION TO GOVERNMENT'S PROPOSED INSTRUCTION NO. 43:

Defendants object to the proposed instruction on the ground that is incomplete, will mislead the jury as to the government's burden of proof on the conspiracy charge, and is unnecessary. The proposed instruction improperly conflates the type of evidence sufficient to prove the existence of an agreement with the requirement that an agreement must exist. An agreement is a necessary element of conspiracy. *See U.S. v. Loveland*, 825 F.3d 555, 558 (9th Cir 2016) ("Without an agreement, there is no conspiracy."). Further, the proposed instruction is potentially misleading as it does not make clear that the government must establish each element beyond a reasonable doubt.

GOVERNMENT'S PROPOSED INSTRUCTION NO. 44

Each member of a conspiracy is responsible for the actions of the other conspirators performed during the course of and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed the crime.

Therefore, you may find the defendant guilty of a crime charged in the indictment if the government has proved each of the following elements beyond a reasonable doubt:

First, someone committed the crime;

Second, that person was a member of a conspiracy;

Third, that person performed the crime in furtherance of the conspiracy;

Fourth, that person and the defendant were members of the same conspiracy at the time that this crime was committed; and

Fifth, the crime fell within the scope of that conspiracy and could reasonably have been foreseen, by the defendant, to be a necessary or natural consequence of the conspiracy.

Ninth Circuit Model Jury Instruction, No. 8.25 (2010 ed.) [Conspiracy -- Liability for Substantive Offense Committed by a Co-Conspirator (Pinkerton Charge)] [modified for generic reference].

86

GOVERNMENT'S POSITION IN SUPPORT OF ITS PROPOSED INSTRUCTION NO. 44

Count One indictment alleges that ten defendants and unindicted co-conspirators conspired to defraud the U.S. and conspired to commit the offenses of wire fraud, customs fraud, and international promotional money laundering.  In Pinkerton v. United States, 328 U.S. 640 (1946), the Supreme Court "extend[ed] liability for a conspirator for a coconspirator's substantive offenses 'when they are reasonably foreseeable and committed in furtherance of the conspiracy.'"  United States v. Henry, 984 F.3d 1343, 1355 (9th Cir. 2021) (quoting United States v. Long, 301 F.3d 1095, 1103 (9th Cir. 2002)).  Accordingly, in conjunction with the model instructions on conspiracy, the government has proposed the Ninth Circuit's Model Jury Instruction setting forth the elements of Pinkerton liability.  This is a proper application of the law and the jury should be so instructed.

Defendants raise two objections to the Ninth Circuit's Pinkerton instruction.  First, they argue that it fails to specify the crime to which Pinkerton liability is sought to be imposed.  There is no such requirement.  Pinkerton liability is one means by which a defendant can commit any substantive offense charged against that defendant.  See Henry, 984 F.3d at 1356 ("Defendants found guilty of armed bank robbery under either a Pinkerton or aiding-and-abetting theory are treated as if they committed the offense as principals.").  Second, defendants claim that the indictment failed to specifically allege Pinkerton liability and therefore giving the Pinkerton charge would be an impermissible constructive amendment.

87

Not so.  A Pinkerton charge is appropriate when conspiracy is properly alleged in the indictment.  United States v. Bozarth, 736 F. App'x 161, 162 (9th Cir. 2018) (Defendant "was charged with conspiracy based on the same conduct at issue in the substantive counts and therefore had the requisite notice to defend against a *Pinkerton* theory of liability, even if foreseeability was not expressly mentioned in the indictment."); cf. United States v. Nakai, 413 F.3d 1019, 1023 (9th Cir. 2005)("It is error to use a Pinkerton instruction in a case in which the indictment does not allege a conspiracy."); see also United States v. Elima, No. 16-CR-37-CJC, 2016 WL 3546584, at *10 (C.D. Cal. 2016)(holding indictment properly charges responsibility for a Pinkerton charge because it specifically alleged the conspiracy).  There is no support for the proposition that the indictment must specifically allege Pinkerton liability.  Pinkerton is not a separate offense, but rather a means by which an offense has been committed.  Thus, it does not need to be separately alleged in the indictment.  United States v. Sanchez, 917 F.2d 607, 612 (1st Cir. 1990)("We have held that the district court may give a Pinkerton charge even though the indictment does not plead vicarious liability. . . . Indeed, every court to consider the matter has held that 'the individual substantive counts need not make reference to co-conspirator liability in order for the jury to be so instructed."); cf. United States v. Garcia, 400 F.3d 816, 820 (9th Cir. 2005)("We have also held a number of times in different contexts that aiding and abetting is embedded in every federal indictment for a substantive crime. . . . It follows that aiding and

abetting is a different means of committing a single crime, not a separate offense itself, for otherwise it could not be implicit in a substantive charge."). As such, defendants' objections to the Model Jury Instruction 8.23 should be overruled.

DEFENDANTS' OBJECTION TO GOVERNMENT'S

PROPOSED INSTRUCTION NO. 44

Defendants object to the government's proposed instruction on the ground that it fails to specify the crime in which it seeks to impose Pinkerton liability.  Defendants further object on the ground that the Indictment fails to allege Pinkerton liability, and the government's attempt to impose such liability through the proposed jury instruction amounts to an impermissible constructive amendment to the Indictment.  *See United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984) (an impermissible amendment of the indictment occurs when "the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them."); *see also United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994) ("A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury.")

Given that the Indictment fails to allege Pinkerton liability, a jury could potentially convict Defendants on a theory which the grand jury never considered in returning the Indictment.  *See Russell v. United States*, 369 U.S. 749, 770 (1962) ("To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which

90

the guaranty of the intervention of a grand jury was designed to secure.")

GOVERNMENT'S PROPOSED INSTRUCTION NO. 48

As you heard in the trial, the 2011 Anti-Dumping and Countervailing Duty Orders ("2011 AD/CVD Orders") required the payment of enhanced duties on the importation certain aluminum extrusions from the People's Republic of China ("PRC") but excluded from the scope of the orders certain "finished merchandise."  I instruct you that aluminum extrusions from the PRC made of series 6xxx aluminum alloy which are cut-to-length and welded together in the form of a pallet, regardless of producer or exporter, are included within the scope of the 2011 AD/CVD Orders and AD/CVD duties were required to be paid on the import of such pallets. Further, aluminum extrusions made from series 6xxx aluminum alloy and welded together in the form of a pallet do not qualify for the "finished merchandise" exclusion of the 2011 AD/CVD Orders.

United States Department of Commerce, Scope Ruling: AEFTC 6xxx Series Pallets (June 13, 2017); Perfectus Aluminum, Inc. v. United States, 391 F. Supp. 3d 1341 (Ct. Int'l Trade 2019), aff'd, Perfectus Aluminum, Inc. v. United States, 836 Fed. Appx. 883 (Fed. Cir. Nov, 6, 2020), petition for reh'g and en banc denied; United States v. Kahre, 737 F.3d 554 (9th Cir. 2013); United States v. Powell, 955 F.2d 1206 (9th Cir. 1992).

GOVERNMENT'S POSITION IN SUPPORT OF PROPOSITION NO. 48

The defense objects to this instruction in its entirety and does not propose an alternate instruction.  As outlined in the government's motion in limine No. 2 (Dkt. 194) and reply (Dkt. 216), whether the pallets fall within the scope of the AD/CVD Orders is an undisputed matter of law and defendants do not contest this proposition.  As such, it is clear that "the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions." United States v. Amparo, 68 F.3d 1222, 1224 (9th Cir. 1995) (quotations and citations omitted).

Defendants litigated this issue for over three years and their arguments were decisively rejected by the Department of Commerce, the Court of International Trade, and the Federal Circuit.  The date of the Scope Rulings does not prevent the Court from providing the requested instruction.  First, the conspiracy charged in the indictment continued through at least May 2019.  Second, the law was not "unsettled" as defendants suggest.  "[A] lack of prior appellate rulings on the topic does not render the law vague, nor does a lack of previously litigated fact patterns[.]"  United States v. George, 420 F.3d 991, 995-96 (9th Cir. 2005).

The plain language of the AD/CVD orders as written in 2011 made clear that defendants' pallets fell within its scope in 2011.  See Scope Ruling (Dkt. 194-2, Exhibit B) at 1, 6, 13, 15 (pallets fell within scope of the plain language of unambiguous AD/CVD orders; pallets made entirely of aluminum extrusions did not qualify for "finished merchandise" exception because finished merchandise

93

required products be made with aluminum just as parts); Perfectus Aluminum Inc. v. United States, 391 F. Supp. 3d 1341 (Ct. Int'l Trade 2019) (pallets within scope of the plain language of the AD/CVD orders); Perfectus Aluminum Inc. v. United States, 836 Fed. Appx. 883, 889 (Fed. Cir. Nov. 6, 2020) (affirming Court of International Trade's holding that pallets fell within plain language of AD/CVD orders).

Defendants now for the first time argue that this jury instruction in an impermissible constructive amendment to the indictment because the indictment fails to allege facts speaking to scope determinations.  This argument is misplaced.  The indictment clearly alleges that the pallets were within the scope of the AD/CVD orders and that defendants knew the pallets were within the scope of the AD/CVD orders.  (See, e.g., Indictment ¶¶ 28, 33(aa)-(cc) (defendants knew "aluminum extrusions in the form of pallets were not finished merchandise" and thus within the scope of the AD/CVD orders)).  Thus, the proposed jury instruction simply instructs the jury on a matter of law -- which defendants do not dispute -- and does not mention the scope ruling.  The proposed jury instruction in no way alters the "charging terms of the indictment," puts forth a "complex of facts distinctly different" from those in the indictment, or "substantially" alters the crime charged "so that it was impossible to know whether the grand jury would have indicted for the crime actually proved."  United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir. 1984).

94

Defendants' meritless arguments about the AD/CVD orders were rejected consistently and soundly over the course of more than three years based on the "plain language" of the AD/CVD orders. Defendants again seek to relitigate this issue and raise meritless arguments.  For the reasons outlined in the government's motion in limine No. 2 and reply, the government's proposed instruction is appropriate because it an undisputed legal issue, will save time, and the Scope Ruling did not change the law.

95

DEFENDANTS' OBJECTION TO GOVERNMENT'S PROPOSED INSTRUCTION NO. 48

Defendants object based on the grounds state in their previously filed Opposition to the government's Motion *In Limine* No. 2.  (ECF No. 209.)  Evidence regarding the scope determination is irrelevant and inadmissible under Federal Rule of Evidence 402.  Evidence is relevant if it has a "tendency to make the existence of any fact more or less probable than it would be without the evidence; and [] the fact is of consequence in determining the action."  Fed. R. Evid. 401.

Here, evidence of the subsequent scope determination is not relevant because the determinations made by the DOC, CIT and Federal Circuit all post-date the importations charged in the Indictment.  *See, e.g., United States v. Hung Van Tieu*, 2014 WL 814053, at *4 (C.D. Cal. Feb. 27, 2014) ("The Government's reliance on evidence of an agreement that post-dates the end of the conspiracy charged in the Indictment to prove that an agreement existed earlier is misplaced.  That evidence is insufficient to sustain a conviction on the conspiracy count charged in the Indictment."); *see also Gulbranson v. Duluth, Missabe and Iron Range Ry. Co.*, 921 F.2d 139, 142 (9th Cir. 1990) (excluding meeting minutes as irrelevant under Rule 401 because they tended to reflect knowledge from eight months after the event in question).

Thus, the proposed instruction overstates the duration of the charged conspiracy.  Defendants further object to the proposed instruction on the ground that the Indictment fails allege facts speaking to scope determinations, and the government's attempt to

96

admit such facts through the proposed jury instruction amounts to an impermissible constructive amendment to the Indictment. *See United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984) (an impermissible amendment of the indictment occurs when "the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them."); *see also United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994) ("A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury.").

97

GOVERNMENT'S PROPOSED INSTRUCTION NO. 49A

An intent to defraud is an intent to deceive and cheat.

Ninth Circuit Model Criminal Jury Instructions, No. 5.12 (2010 ed.)

[Intent to Defraud -- Defined]

98

DEFENDANTS' PROPOSED INSTRUCTION NO. 49B

An intent to defraud is an intent to deceive and cheat. There is a difference between an intent to deceive and an intent to cheat. An intent to deceive requires a defendant to make false statements or utilize other forms of deception. An intent to cheat requires a defendant to deprive a victim of money or property by means of those deceptions. Here, both an intent to deceive and an intent to cheat are required.

United States v. Miller, 953 F.3d 1095, 1101-03 (9th Cir. 2020) ("It follows that to be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat.") (emphasis in original); *see also Shaw v. United States*, 137 S. Ct. 462, 469 (2016) (under the bank fraud statute, 18 U.S.C. § 1344(1), a scheme to defraud must be one to "deceive the bank *and* deprive it of something of value") (emphasis in original).

99

GOVERNMENT'S POSITION REGARDING PROPOSED

INSTRUCTIONS NO. 49A AND 49B

In the Government's Proposed Instruction No. 49A, the government proposes Ninth Circuit Model Jury Instruction No. 5.12, which correctly defines the intent to defraud as the intent to deceive and cheat.  This definition appropriately tracks the Ninth Circuit's decision in United States v. Miller, 953 F.3d 1095, 1101-03 (9th Cir. 2020).  Defendants contend that the Ninth Circuit Model Instruction is incomplete.  They are wrong.  The instruction defines the term in its entirety.  Defendants argue that the instruction fails to make clear that the defendants must have an intent to both deceive and cheat.  However, the use of the word "and" makes clear that defendants must have had intended both to be guilty.  Further, defendants' proposed instruction is misleading.  Defendants propose the following sentence, among others, be included:  "An intent to cheat requires a defendant to deprive a victim of money or property by means of those deceptions."  That is a misstatement of the law. The Ninth Circuit in Miller held that a defendant must intend to "deprive the victim of money or property by means of deception." Defendant's proposed instruction reads out "intent" entirely in an attempt to impose on the government an obligation to prove loss.  It is settled law that the wire fraud statute does not require proof of any loss.  United States v. Oren, 893 F.2d 1057, 1061 (9th Cir. 1990).  As such, the government's proposed instruction, which is the Ninth Circuit's Model Instruction, should be given to the jury.

100

DEFENDANTS' OBJECTION TO GOVERNMENT'S PROPOSED INSTRUCTION NO. 49A:

Defendants object to the government's proposed instruction as incomplete. There is a difference between an intent to deceive and an intent to cheat. An intent to deceive requires a defendant to make false statements or utilize other forms of deception. An intent to cheat requires a defendant to deprive a victim of money or property by means of those deceptions.

Here, both an intent to deceive and an intent to cheat are required. *See United States v. Miller*, 953 F.3d 1095, 1101-03 (9th Cir. 2020) ("It follows that to be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat.") (emphasis in original); *see also Shaw v. United States*, 137 S. Ct. 462, 469 (2016) (under the bank fraud statute, 18 U.S.C. § 1344(1), a scheme to defraud must be one to "deceive the bank *and* deprive it of something of value") (emphasis in original).

DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS'

PROPOSED INSTRUCTION NO. 49B

Defendants' proposed instruction expands on the government's proposed instruction, and explains the difference between an intent to deceive and an intent to cheat, and that both are required here. *See United States v. Miller*, 953 F.3d 1095, 1101-03 (9th Cir. 2020) ("It follows that to be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other

forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat.") (emphasis in original); *see also Shaw v. United States*, 137 S. Ct. 462, 469 (2016) (under the bank fraud statute, 18 U.S.C. § 1344(1), a scheme to defraud must be one to "deceive the bank *and* deprive it of something of value") (emphasis in original).  Without an explanation of the difference between the two, the government's proposed instruction is incomplete.

GOVERNMENT'S PROPOSED INSTRUCTION NO. 51

You may find that the defendant acted knowingly with respect to a particular circumstance if you find beyond a reasonable doubt that the defendant:

1. was aware of a high probability that the particular circumstance existed, and

2. deliberately avoided learning the truth.

You may not find such knowledge, however, if you find that the defendant actually believed that the particular circumstance did not exist, or if you find that the defendant was simply negligent, careless, or foolish.

Ninth Circuit Model Jury Instructions, No. 5.8 (2010 ed.)

[Deliberate Ignorance] [modified for generic reference]

103

GOVERNMENT'S POSITION IN SUPPORT OF ITS PROPOSED INSTRUCTION NO. 51

In Proposed Instruction No. 51, the government proposes the Ninth Circuit's Model Jury Instruction No. 5.8 on deliberate indifference. "A deliberate ignorance – or "willful blindness" – instruction is only relevant if the jury rejects the government's evidence of actual knowledge." United States v. Heredia, 483 F.3d 913, 922 (9th Cir. 2007)(en banc). In determining whether to give this instruction, the Court "must determine whether the jury could rationally find willful blindness even though it has rejected the government's evidence of actual knowledge." Id. Defendants contend that there is no justification for this instruction. To the contrary, there is abundant evidence (in addition to evidence of actual knowledge) to support a jury finding that the Perfectus and Warehouse defendants deliberately avoiding learning the truth of what they were doing. Specifically, beginning as early as 2009, millions of pounds of aluminum were arriving at the warehouses owned by the Warehouse defendants and imported by Perfectus at the direction of defendants Liu and China Zhongwang. The aluminum was not sold and rather was concealed and stockpiled in the Warehouse defendants. The evidence at trial will show that the Perfectus and Warehouse defendants imported and concealed the aluminum for years. Indeed, the government anticipates that the evidence at trial will show that the Perfectus defendants purchased hundreds of millions of dollars' worth of aluminum that was concealed by the Warehouse defendants when their sales between $1 to $2 million. This business model makes absolutely no sense and the failure to ask questions

104

about it justifies a deliberate indifference instruction.
Similarly, on the customs fraud piece, there is significant evidence
that the Perfectus and Warehouse defendants deliberately avoided
learning the truth.  For example, notwithstanding defendant Liu
being told that the pallets would not qualify as finished
merchandise, the Perfectus and Warehouse defendants imported and
concealed over 2 million in the span of 3 ½ years.  During that
time, they never sought a scope ruling from the Department of
Commerce.  The money laundering charges are similarly predicated.
Over the course of the scheme, there was in excess of $1 billion
funneled through U.S. bank accounts of the Perfectus defendants and
Eric Shen that was used to purchase the aluminum and the Warehouse
defendants.  The funds came into the bank accounts and then went
right out to "purchase" aluminum.  Each incoming transfer was booked
as a loan.  The evidence will show that by the middle of 2015,
Perfectus had over $1.2 billion in loans on its books.  The evidence
will further show that no one saw loan agreements and no interest or
principal payments were ever made.  Accordingly, it is entirely
rational for a jury to conclude that the defendants deliberately
avoided learning the truth that the incoming money was being used to
promote other illegal schemes.  In the end, "[t]he government has no
way of knowing which version of the facts the jury will believe, and
it is entitled (like any other litigant) to have the jury instructed
in conformity with [different] rational possibilities. That these
possibilities are mutually exclusive is of no consequence." Id. at
923.  Indeed, the Ninth Circuit has held that "[a] party may present

105

alternative factual theories, and is entitled to instructions supporting all rational inferences the jury might draw from the evidence." Id.

DEFENDANTS' OBJECTION TO GOVERNMENT'S PROPOSED INSTRUCTION NO. 51

Defendants object on the ground that the government's proposed instruction is unwarranted based on the allegations in the Indictment.  The Ninth Circuit has repeatedly warned that this proposed instruction—traced to *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976)—is "*only* appropriate when the government presents specific evidence showing that a defendant (1) actually suspected that he or she might be involved in criminal activity, (2) deliberately avoided taking steps to confirm or deny those suspicions, and (3) did so in order to provide himself or herself with a defense in the event of prosecution." *United States v. Baron*, 94 F.3d 1312, 1318 n.3 (9th Cir. 1996) (emphasis added).  The Indictment, and the evidence produced to date, fail to identify any such specific evidence to warrant the proposed instruction.

GOVERNMENT'S PROPOSED INSTRUCTION NO. 52A

For purposes of passing false or fraudulent papers through a customshouse, an act is done willfully if the defendant acts with a bad purpose, that is, with general knowledge that the defendant's conduct was unlawful.  The government need not prove that the defendant was aware of the specific provision of the law that rendered the defendant's conduct unlawful.

Bryan v. United States, 524 U.S. 184, 190-91 (1988); United States v. Awad, 551 F.3d 930, 939-41 (9th Cir. 2009) (as applied to health care fraud statute).

108

DEFENDANTS' PROPOSED INSTRUCTION NO. 52B

Willfulness requires you to determine whether the government has proven beyond a reasonable doubt that the defendants, at the time the charged false statements were submitted to Customs, acted with the specific intent to violate a known legal duty and with knowledge that the statement was untrue and that the conduct was unlawful.  You may not determine that the defendants acted willfully simply because the aluminum pallets were in defendants' possession.

Comment to Ninth Circuit Model Jury Instructions, No. 8.73 (2021 ed.) [False Statement to Government Agency]; *United States v. Lee*, 183 F.3d 1029, 1032-33 (9th Cir. 1999) (22 U.S.C. § 2778(c) is not vague because the scienter requirement of "willfully" protects the innocent exporter by requiring proof that the defendant was aware that his actions were illegal); *United States v. Mousavi*, 604 F.3d 1084, 1092 (9th Cir. 2010) (citing *Bryan v. United States*, 524 U.S. 184 (1998)) ("willfulness" requires the government to prove that the defendant acted with "specific intent to violate a known legal duty"); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58, n. 5 (2007) (a defendant cannot harbor such criminal intent unless he "acted with knowledge that his conduct was unlawful" and with the specific intent to violate a known legal duty created by highly technical statute); *United States v. Huang*, 87 F. App'x 656, 658-59 (9th Cir. 2004) (holding that jury instructions for violation of 18 U.S.C. § 545 improperly suggested that defendant's knowledge was required to be inferred from possession).

GOVERNMENT'S POSITION REGARDING GOVERNMENT'S PROPOSED INSTRUCTION NO. 52A AND DEFENDANTS' PROPOSED INSTRUCTION NO. 52B

The government proposes the following definition of willfulness under 18 U.S.C. § 545, which proscribes the submission of false papers to a customhouse (in this case, filing false Forms 7505 with Customs and Border Patrol):

> For purposes of passing false or fraudulent papers through a customshouse, an act is done willfully if the defendant acts with a bad purpose, that is, with general knowledge that the defendant's conduct was unlawful. The government need not prove that the defendant was aware of the specific provision of the law that rendered the defendant's conduct unlawful.

Defendants object, asking that the Court include the phrase "with specific intent to violate a known legal duty."  Defendants then incorrectly cite the Ninth Circuit's opinion in Mousavi for the proposition that willfulness necessarily requires the government to prove specific intent to violate a known legal duty. United States v. Mousavi, 604 F.3d 1084, 1092 (9th Cir. 2010) (citing Bryan v. United States, 524 U.S. 184 (1998)). This is wrong.

In Mousavi, the Ninth Circuit clarified that there are "two standards, one higher than the other, for willfulness in the criminal context." Id. at 1092 (internal quotations omitted). First, as "a general matter, when used in the criminal context, a willful act is one undertaken with a bad purpose. Said otherwise, in order to establish a willful violation of a statute, the Government must

110

prove that the defendant acted with knowledge that his conduct was unlawful." Id. (internal quotations and citations omitted). Second, in criminal cases involving "highly technical statutes . . . willfulness requires the government to prove that the defendant acted with specific intent to violate a known legal duty." Id. (internal citations omitted).

To that end, the definition of willfulness that presumptively applies in criminal cases requires the government only to prove—as the government suggests—knowledge that the defendant's conduct was unlawful. Defendants propose the heightened standard reserved only for "highly technical statutes," but cite no support for this objection. To the contrary, the cases the defendants cite support the instruction the government offers.

For instance, in Mousavi, the Ninth Circuit concluded that to prove a violation of the International Economic Emergency Powers Act ("IEEPA") and the Iranian Transaction Regulations ("ITR")—a substantially more complex regulatory scheme than Section 545—the government had to prove only "that Mousavi knew he was acting unlawfully," rejecting "Mousavi's argument that the government also had to prove that Mousavi had a specific understanding of the ITR's licensing requirements." In Bryan v. United States, 524 U.S. 184 (1998), the Supreme Court rejected the heightened willfulness standard in the context of 18 U.S.C. § 922(a)(1), which prohibits unlicensed firearms dealing. Id. at 118 (holding that "the willfulness requirement of § 924(a)(1)(D) does not carve out an exception to the traditional rule that ignorance of the law is no

111

excuse" and that "knowledge that the conduct is unlawful is all that is required").

Similarly, the defendants rely on the model instruction for 18 U.S.C. § 1001 (false statements) and a Ninth Circuit opinion dealing with 18 U.S.C. 2778(c) (part of the Arms Export Control Act), neither of which calls for the government to prove specific intent to violate a known legal duty. Model Crim. Jury Instr. 9th Cir. 8.73 (2021) ("To make a false statement willfully under Section 1001, the defendant must have both the specific intent to make a false statement and the knowledge that his or her conduct was unlawful.") (internal quotations omitted); United States v. Lee, 183 F.3d 1029, 1032-33 (9th Cir. 1999) ("Indeed, the defense in this case was that Ray and Lee exported the cutter blades and die unaware that their actions were illegal.").[1]

The government therefore requests that the Court define willfulness as the government proposes, which applies to the criminal cases "as a general matter," without instructing the jury to find that the defendants "specifically intended to violate a known legal duty," the rare iteration of willfulness reserved only for highly technical statutes. Mousavi, 604 F.3d at 1093 ("In light of these precedents, we conclude there is no basis for requiring the government to prove that a person charged with violating IEEPA and the ITR was aware of a specific licensing requirement. While the

---

[1] The defendants' final citation on this point, Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 58, n. 5 (2007), is a footnote from a civil case that involved the Fair Credit Reporting Act, and is therefore inapposite.

112

prohibitions imposed by IEEPA and the ITR are for conduct that is not obviously illegal, the danger of ensnaring individuals engaged in apparently innocent conduct is no greater under IEEPA than under the statute analyzed in Bryan [unlicensed firearms dealing]."); United States v. Reyes, 577 F.3d 1069, 1080 (9th Cir. 2009) (in prosecution for securities fraud, "willfully in this context does *not* require that the actor know specifically that the conduct was unlawful") (emphasis in original) (quoting United States v. Tarallo, 380 F.3d 1174, 1188 (9th Cir. 2004)); United States v. Berry, 683 F.3d 1015, 1021 (9th Cir. 2012) (in prosecution for social security fraud, "willfully" connotes "culpable state of mind"); United States v. Awad, 551 F.3d 930, 939 (9th Cir. 2009) (in health care fraud case, "willful" act is one undertaken with "bad purpose" with knowledge that conduct was unlawful).

113

DEFENDANTS' OBJECTION TO GOVERNMENT'S PROPOSED INSTRUCTION NO. 52A

Defendants object on the grounds that the government's proposed instruction is incomplete as to the definition of willfulness.  Nor do either of the cases cited by the government describe willfulness in the context of customs fraud.  The government chiefly relies on *Bryan v. United States*, 524 U.S. 184, 190-91 (1988), which concerned willfulness in the context of a conviction for dealing in firearms without a federal license, in support of its proposed instruction. The court in *Bryan*, however, distinguished its holding—that defendant's knowledge of a specific legal duty was not required—from cases involving highly technical statutes.  524 U.S. at 195 (noting that as a general matter, cases involving technical statutes are an exception to the traditional rule that ignorance of the law is no excuse, and "require that the defendant have knowledge of the law.").  Where, as here, a technical statute "present[s] the danger of ensnaring individuals engaged in apparently innocent conduct," willfulness is interpreted to require that "the defendant have knowledge of the law."  *Id.* at 194.

DEFENDANTS' MEMORANDUM IN SUPPORT OF

DEFENDANTS' PROPOSED INSTRUCTION NO. 52B

Defendants' proposed instruction reflects that where, as here, defendants are charged with violating technical statutes, willfulness is interpreted as requiring knowledge of the law.  *See Bryan v. United States*, 524 U.S. 184, 195 (1998)).  Relaxing this requirement to require only that a defendant have "general knowledge

114

that the defendant's conduct was unlawful," as proposed by the government, would "presen[t] the danger of ensnaring individuals engaged in apparently innocent conduct."  *Id.* at 194.

In the context of a similar statute regulating exports, the Ninth Circuit has held that the scienter requirement of "willfully" is intended to protect "the innocent exporter who might accidently and unknowingly export a proscribed component or part."  *United States v. Lee*, 183 F.3d 1029, 1033 (9th Cir. 1999).  Where, as here, a Defendant could have engaged in innocent conduct but still violated a technical statute, willfulness is oftentimes interpreted to require that "the defendant have knowledge of the law."  *Bryan*, 524 U.S. at 194.

115

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 56</u>

Under the United States Constitution, in order for a defendant to receive a fair trial, the government must inform the defense of any information known to the government that tends to suggest the defendant may not have committed the crimes charged and any information that casts doubt on the credibility of the government's own evidence.

In this case, the government violated those important constitutional principles, upon which the fair administration of our system of justice depends, on multiple occasions.  In evaluating the merits of this case, you can decide what weight, if any, to give to the government's violations of these constitutional principles. The government's actions, standing alone, or in combination with other facts presented in this case, may create a reasonable doubt in your mind about the defendant's guilt.

*See* Comment to Ninth Circuit Model Criminal Jury Instructions, No. 4.20 (2010 ed.) [Untimely Disclosures Of Exculpatory Or Impeachment Evidence] (noting that a trial court has discretion in shaping remedies for violations of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972)); *United States v. Garrison*, 888 F.3d 1057, 1061-66 (9th Cir. 2018) (approving an instruction that the government's failure to timely comply with its constitutional obligations could lead the jury to find reasonable doubt as to guilt); *see also United States v. Mikaelian*, No. 2:11-cr-00922-FMO (C.D. Cal. 2014) (Dkt. 849) (providing full text of jury instruction given in <u>Garrison</u>).

GOVERNMENT'S POSITION REGARDING DEFENDANTS'

PROPOSED INSTRUCTION NO. 56

Without any basis whatsoever, defendants ask for a proposed instruction telling the jury that the government failed to timely disclose discovery.  The instruction is designed to allow the Court to craft a "remed[y]for violations of Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972)."  Yet defendants fail to identify a single violation of Brady or Giglio. That is because there has not been any such violation.  Defendants request this instruction only to confuse the jury, malign the government, and set the stage for an eventual appeal.  Such gamesmanship should not be tolerated.  As laid out in detail in the government's opposition to defendants' ex parte to continue the trial, the government has produced 2.8 million pages in discovery to defendants and have timely filed with all of its discovery obligations.  Indeed, defendants have made only two requests for discovery in this case:  one generic request in August 2020 and the second for rap sheets of witnesses (the government had provided a summary thereof), with which the government promptly complied.  To date, defendants have not identified a single deficiency in the government's productions.  But yet, they ask for an incendiary jury instruction anyway.  In support of their meritless request, defendants cite United States v. Garrison, 888 F.3d 1057 (9th Cir. 2018).  However, in Garrison, the government "conceded that it had repeatedly failed to timely turn over Brady and Giglio evidence" and

ultimately moved to dismiss the charges.  888 F.3d at 1062.  In Garrison, the Ninth Circuit affirmed the district court's decision to provide the instruction and its denial of defendants' repeated motion to dismiss.  Garrison is inapposite to defendants' situation.  Here, defendants simply want to further delay trial.  There is no conduct that warrants this instruction and certainly none approaching Garrison.[2]  Defendants' request for the instruction should be denied.

---

[2] In addition to Garrison, defendants cite a district court case in support of their request.  The district court case was, of course, the case that led to the Ninth Circuit's opinion in Garrison, so is no further support for defendants' position.

118

<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF</u>

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 56</u>

Defendants' proposed jury instruction is necessitated by the government's untimely disclosure of evidence, which defense counsel cannot review fully to determine whether the material contains exculpatory or impeachment evidence.  Following the Court's denial on April 30, 2021 of the parties' proposed stipulation to continue the trial date, the government began sending defense counsel additional document productions.  Since May 26, 2021, the government has sent defense counsel 15 document productions containing 129,025 pages.

Significantly, eight of these document productions date back to the past two weeks alone.  The government's productions since July 21, 2021 (document productions 16 through 23) total 19,045 pages. Additionally, this page count underreports the volume of the production because each Excel spreadsheet is only counted as a single page, no matter how dense or voluminous.  For example, on July 29, 2021, the government, among other documents, produced multiple Excel spreadsheets, including Bates-numbered USAO_02829162, which contains over twenty different tabs, and USAO_02829164, which contains 2,878 line entries.

The government's draft exhibit and witness lists create even more confusion for Defendants.  The government's draft exhibit list contains 503 separate documents, but fails to identify 197 documents by Bates number, leaving Defendants' counsel to guess as to the precise document the government is identifying.  Further, while the

government agreed to produce all of these exhibits, the government did not produce 304 of the exhibits, forcing Defendants' counsel to locate these missing exhibits out of a sea of 2,831,921 pages of documents produced in this case.  Likewise, the government's draft exhibit list names 44 witnesses.  Out of these 44 witnesses, the government has produced additional documents related to 30 of these witnesses within the last two weeks.

The government's late productions—particularly those within the past two weeks—prevent Defendants' counsel from adequately reviewing the discovery produced to date in order to prepare an effective defense prior to the current trial date.  As such, an instruction on untimely disclosure of exculpatory or impeachment evidence is warranted.  *See Faretta v. California*, 422 U.S. 806, 818 (1975) (the Sixth Amendment protects a criminal defendant's "rights to notice, confrontation, and compulsory process," and "guarantee[s] that a criminal charge may be answered in a manner now considered fundamental to the fair administration of American justice—through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence."); *Strickland v. Washington*, 466 U.S. 668, 685 (1984) (quotations and citations omitted) (the right to effective assistance of counsel under the Sixth Amendment also "plays a crucial role in the adversarial system embodied in the Sixth Amendment since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled."); *see also United States v.*

*Govey*, 284 F. Supp. 3d 1054, 1063 (C.D. Cal. 2018) (dismissing Indictment where government's late disclosure of almost 100,000 documents "made it impossible to review the material evidence and use it against the key trial witnesses.").

DEFENDANTS' PROPOSED INSTRUCTION NO. 57

Defendants contend that if they committed the acts charged in the indictment, they did so reasonably relying upon the affirmative advice of an authorized federal government official or agent of the federal government.  To establish this defense, Defendants have the burden to show by a preponderance of the evidence that:

First, an authorized federal government official or agent of the federal government was empowered to render the claimed erroneous advice;

Second, the federal government official or agent of the federal government had been made aware of all the relevant historical facts;

Third, the federal government official or agent of the federal government affirmatively told Defendants the proscribed conduct was permissible;

Fourth, Defendants relied on the false information; and

Fifth, this reliance was reasonable.

In deciding this, you should consider all of the relevant circumstances, including the identity of the federal government official or agent, what the official or agent said to the defendant, and how closely the defendant followed any instructions the official or agent gave.

A preponderance of the evidence means that you must be persuaded that the things Defendants seek to prove are more probably true than not true. This is a lesser burden of proof than the government's burden to prove beyond a reasonable doubt each element of conspiracy to defraud the United States, wire fraud, customs

122

fraud, or international promotional money laundering.

If you find that Defendants have proved that they reasonably relied upon the affirmative advice of the federal government official or agent, you must find the defendant not guilty of conspiracy to defraud the United States, wire fraud, customs fraud, or international promotional money laundering.

Ninth Circuit Model Criminal Jury Instructions, No. 6.2B (2010 ed.) [Entrapment By Estoppel Defense].

123

GOVERNMENT'S POSITION REGARDING DEFENDANTS'

PROPOSED INSTRUCTION NO. 57

The government objects to the defendant's proposed entrapment by estoppel instruction as premature. As a general matter, the Court should not give an instruction on an affirmative defense until there is sufficient evidence introduced at trial to warrant the instruction. United States v. Brebner, 951 F.2d 1017, 1024 (9th Cir. 1991) (citing United States v. Brandon, 633 F.2d 773, 778 (9th Cir. 1980) ("The court may properly refuse to give an entrapment instruction to the jury when a rational view of the evidence does not support the defense.").

With that said, the government is not aware of evidence that could warrant this instruction. As the instruction makes clear, entrapment by estoppel requires the defendant to show that an authorized government official, empowered to render legal advice, who was made aware of all the relevant facts, affirmatively told the defendant that his proscribed conduct was permissible, and that the defendant's reliance on the erroneous advice was reasonable. United States v. Batterjee, 361 F.3d 1210, 1216-17 (9th Cir. 2004). On the last element, the defendant must show that he was "sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries." Id. The government knows of no evidence would meet the elements of this defense.

Finally, there is some authority for the proposition that under Federal Rule of Criminal Procedure 12.3, which by its terms applies

124

to the closely-related public authority defense, the defendants have an obligation to give reasonable notice of an entrapment by estoppel defense.  United States v. Theunick, 651 F.3d 578 (6th Cir. 2011) ("The district court did not abuse its discretion in denying Garnett's jury instruction on entrapment by estoppel. First, Garnett's notice did not include all of the information required by Fed. R. Crim. P. 12.3."). Thus far, the defendants have told the government that they intend to raise this defense, that the agency that provided the erroneous advice was Customs and Border Patrol, and that the timing of the rendered advice was somewhere between 2011 and 2014. The defendants have not given the government the name of the authorized government official, the information the defendants provided that official (or whether it included all relevant facts), the advice the defendants received, when that advice was rendered, or to whom exactly that advice was given.

<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF</u>

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 57</u>

Defendants' proposed instruction is appropriate here given the following underlying facts: (1) it was the duty of the government to inspect merchandise and assess duties, (2) there are no allegations that Defendants ever attempted to hide the pallets or refused to make available their Form 751 documents to CBP officials; (3) the pallets were identified plainly as pallets; (4) approximately 2,200,000 pallets were purportedly imported between 2011 and 2014; and (5) there are no allegations that during this time, CBP ever notified Defendants of an issue with the pallets.

An entrapment by estoppel instruction is also appropriate given that one of the government's witnesses, Bruce Raine, worked at CBP for 34 years, and was part of a group responsible for metal importations. In this role, his responsibilities included reviewing paperwork and conducting physical examinations of shipments. Defendants anticipate that the relevant facts supporting an entrapment by estoppel defense will be established as part of the government's case.

*See Indictment*, at ¶ 29; 33(i); 33(x)-(cc); 34; 40; *see also United States v. Brebner*, 951 F.2d 1017, 1024 (9th Cir. 1991) ("The entrapment by estoppel defense applies when an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official."); *United States v. Collins*, 61 F.3d 1379, 1385 (9th Cir. 1995) (quoting *Brebner*, 951 F.2d at 1027)

(noting that a defendant may have relied on either on "a federal government official empowered to render the claimed erroneous advice, or on an authorized agent of the federal government, who . . . has been granted the authority from the federal government to render such advice.").

DEFENDANTS' PROPOSED INSTRUCTION NO. 58

The Government alleges under count one of the Indictment that Defendants violated the law by passing false and fraudulent papers through a customshouse. They must prove that Defendants knowingly filed a false or fraudulent form 7501 with customs at the time of importation; that they knew that the form was false or fraudulent; and they acted with intent to defraud; and that the false form was capable of influencing actions by the U.S. government.

The terms "knowingly" "knew that" and "willfully with intent to defraud" all mean that the government must prove a defendant's knowledge, willfulness and intent beyond a reasonable doubt. This is called *mens rea*.

In considering the existence of *mens rea*, you must determine the state of mind of Defendants at the time that the Government claims that the violation of law occurred, that is the time period between June 30, 2011 and June 27, 2014 when the alleged false customs documents were provided to CBP.

In addition, in determining the existence of *mens rea* you must only consider the allegations of fraud in the indictment and no others.

The Government alleges, and has the burden of proving, that the pallets imported by the defendants were not finished merchandise, but were, instead, extrusions "tack welded" together to look like pallets for the purpose and intent of fraudulently concealing from CBP that they were actually aluminum extrusions subject to the AD/CVD orders.

128

If the Government fails in their burden of proving this allegation, then you must find Defendants not guilty on this alleged violation of law.

(*See* Indictment, at ¶¶ 33(a)(ii)-(iii); 33(a)(aa)-(cc); 34 [Overt Act Nos. 24-29, 31-32, 34, 37-38, 42-44, 46-53, 55, 57, 83]; *Russell v. United States*, 369 U.S. 749, 770 (1962) ("To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."); *United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994) ("A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury."); *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984) ("An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon

129

them."); *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002), holding modified on other grounds by *United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007) (citing *Von Stoll*, 726 F.2d at 586) ("In our efforts to draw this line, we have found constructive amendment of an indictment where (1) 'there is a complex of facts [presented at trial] distinctly different from those set forth in the charging instrument,' or (2) 'the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved.'"). *See also United States v. Dipentino*, 242 F.3d 1090, 1095 (9th Cir. 2001) (impermissible constructive amendment occurred where indictment charged defendants with allowing asbestos-containing materials to dry out on floor instead of placing them into containers, but jury instruction permitted jury to convict defendants for failing to deposit asbestos-containing materials at waste disposal site).

GOVERNMENT'S POSITION WITH REGARD TO

DEFENDANTS' PROPOSED INSTRUCTION NO. 58

The government objects to the defendants' proposed "Customs Fraud/Mens Rea" instruction. First, the defendants provide no support for the actual language of the instruction. Not from the model jury instructions, case law, or any other source. Instead, the defendants cite paragraphs from the indictment and a number of cases saying that the charging document cannot be constructively amended, which at any rate, is a legal question that the jury does not decide. United States v. Reese, 2 F.3d 870, 890 (9th Cir. 1993) (framing the issue of constructive amendment as a legal question). As a threshold matter, there has been no constructive amendment. The government's theory has and continues to be the same as that outlined in the indictment.  The pallets are within the scope of the AD/CVD orders and defendants willfully and intentionally evaded the AD/CVD orders by pretending that the products fell within the finished merchandise exception to the AD/CVD orders that defendants knew full well did not apply.

Second, the legal assertions in the instruction are plainly wrong.  Notably, the instruction reads "in determining the existence of mens rea, you must only consider the allegations of fraud in the indictment and no others."  As a foundational concept in criminal law, the jury does not consider allegations when determining whether the government proved an element of the offense, since allegations are not evidence. Ninth Cir. Model Crim. Jury Instr. 1.2 ("The indictment simply describes the charges the government brings

131

against the defendant. The indictment is not evidence and does not prove anything.").

Nor must the indictment describe all the evidence the government will introduce at trial.  As the federal rules make clear, the indictment describes only "the essential facts constituting the offense charged," not an exhaustive catalogue all evidence pertaining to each element. Fed. R. Crim. P. 7(c); cf. Cook v. United States, 354 F.2d 529, 531 (9th Cir. 1965) ("A defendant is not entitled to know all the evidence the government intends to produce").  Thus, the federal rules provide that evidence is admissible if it has a tendency to make a "fact of consequence" more or less probable. Fed. R. Evid. 401. The model instructions are in accord. Model Crim. Jury Instr. 5.7 ("You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.") (emphasis added); cf. Model Crim. Jury Instr. 1.5 ("You are to consider both direct and circumstantial evidence."); see also United States v. Rizk, 660 F.3d 1125, 1132-33 (9th Cir. 2011)("The rule is well established that the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment.").

Third, in the final two paragraphs, the proposed instruction directs the jury to acquit if the government fails to prove defendants' 52-word adaptation of the indictment. Defendant's cite no law supporting their request to have the Court read a watered-

132

down version of the government's case theory, especially one defendants wrote.

DEFENDANTS' MEMORANDUM IN SUPPORT OF

DEFENDANTS' PROPOSED INSTRUCTION NO. 58

The government is required to prove that Defendants had the requisite *mens rea* to support its charge of customs fraud.  Under the relevant statute—18 U.S.C. § 545—four elements must be met: (1) the defendant knowingly passed a document, specifically a CBP Form 7501, through a customhouse of the United States; (2) the defendant knew that the CBP Form 7501 was false or fraudulent; (3) the defendant acted willfully with intent to defraud the United States; and (4) the CBP Form 7501 had a natural tendency to influence, or was capable of influencing, action by the United States.  *See* Ninth Circuit Model Criminal Jury Instructions No. 8.36 (2010 ed.) (Passing False Documents Through Customhouse – Elements).

The statute makes clear that a defendant charged under 18 U.S.C. § 545 must have the necessary intent.  *See id*. ("Whoever knowingly and willfully, with intent to defraud the United States . . . makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper . . .").  It is the government's burden to prove beyond a reasonable doubt that Defendants had the necessary *mens rea* to commit customs fraud as alleged in the Indictment.

134