1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3      HONORABLE R. GARY KLAUSNER, JUDGE PRESIDING

4   UNITED STATES OF AMERICA,        )
                                     )
5                                    )
                                     )
6                    Plaintiff,      )
                                     )
7                                    )
                                     )
8          Vs.                       )   No. CR19-282-RGK
                                     )
9                                    )
                                     )
10  LIU, ET AL,                      )
                                     )
11                                   )
                                     )
12                   Defendants.     )
                                     )
13  _____)

14

15

16      REPORTER'S TRANSCRIPT OF PROCEEDINGS

17              *SENTENCING*

18          LOS ANGELES, CALIFORNIA

19          MONDAY, APRIL 11, 2022

20

21

22      MIRIAM V. BAIRD, CSR 11893
       OFFICIAL U.S. DISTRICT COURT REPORTER
23      350 WEST FIRST STREET, FOURTH FLOOR
        LOS ANGELES, CALIFORNIA 90012
24          MVB11893@AOL.COM

25

1                      **A P P E A R A N C E S**

2

3    **IN BEHALF OF THE PLAINTIFF,**      ROGER HSIEH
     **UNITED STATES OF AMERICA:**        GREGORY DOUGLAS BERNSTEIN
4                                         AUSA - OFFICE OF US
                                          ATTORNEY
5                                         MAJOR FRAUDS SECTION
                                          312 NORTH SPRING STREET
6                                         SUITE 1100
                                          LOS ANGELES, CA 90012
7

8

9

10   **IN BEHALF OF THE DEFENDANTS,**     ROBERT F. RUYAK
     **LIU, ET AL:**                      RUYAKCHERIAN LLP
                                          1901 L STREET NW SUITE 700
11                                        WASHINGTON, DC 20036

12                                        HILARY POTASHNER
                                          LARSON LLP
13                                        555 SOUTH FLOWER STREET
                                          SUITE 4400
14                                        LOS ANGELES, CA 90071

15

16

17

18

19

20

21

22

23

24

25

```
 1       LOS ANGELES, CALIFORNIA; MONDAY, APRIL 11, 2022; 1:37 P.M.

 2                              ---

 3

 4            THE CLERK:  Calling CR19-00282-RGK USA v. Perfectus

 5    Aluminum, Inc.  CC19-1282.

 6            Counsel, please state your appearance for the

 7    record.

 8            MR. HSIEH:  Good afternoon, Your Honor.  Roger

 9    Hsieh on behalf of the United States.  At counsel table, I

10    also have Assistant United States Attorney Gregory Bernstein.

11            THE COURT:  Thank you, Counsel.

12            MR. RUYAK:  Robert Ruyak, Your Honor, for the

13    Perfectus defendants.

14            MS. POTASHNER:  Good afternoon, Your Honor.

15    Hillary Potashner and Alexander Lowder on behalf of the four

16    warehouse defendants.

17            THE COURT:  Okay.  Thank you, Counsel.

18            Counsel, let me just talk to you a little bit about

19    logistics, because we have six defendants and we have two

20    defendant groups.  Do you have any suggestion or any

21    preference on how we want to handle this?  Do we want to have

22    each defendant separately as far as argument goes?  Do we

23    want to just do one argument for the Perfectus, one for the

24    warehouse, in case it's the same argument?  And then just

25    sentence separately?  What are your preferences?  You decide.
```

```
 1                MS. POTASHNER:  Okay.

 2                THE COURT:  I'm just trying to think of

 3      logistically what's the best way to do it.

 4                MS. POTASHNER:  No.  That makes sense, Your Honor.

 5                What we were intending to do is, Mr. Ruyak was

 6      going to address the Court first, and then I was going to

 7      follow up.  Because a lot of -- as the Court knows, a lot of

 8      our arguments overlap.

 9                THE COURT:  Exactly.

10                MS. POTASHNER:  And to the extent that they're

11      separate, we would address our separate pieces.

12                But for the four warehouse defendants, I think I

13      can just speak once rather than repeat the same argument

14      essentially four times.

15                THE COURT:  Okay.

16                MR. HSIEH:  The Government's fine with that

17      approach, Your Honor.

18                THE COURT:  Counsel, that's the first step.

19                The second step is, after we hear argument

20      concerning all of the six defendants and the plaintiff on it,

21      how do you want to do the sentencing?  I'm assuming we should

22      do each one individually.  Or we can do the conditions of

23      probation, which are basically the same together, just do --

24      do you have a preference?

25                I mean, I don't mind reading through them
```

 1    individually, but we're going to be reading through a lot of

 2    paperwork six different times.

 3              MS. POTASHNER:  For the warehouse defendants, we're

 4    fine with the Court doing it one time.

 5              MR. RUYAK:  Same thing for Perfectus.

 6              THE COURT:  Then are both sides ready as far as

 7    sentencing is concerned?

 8              MR. HSIEH:  The Government is ready to proceed,

 9    Your Honor.

10              THE COURT:  Which one wants to go first?

11              MR. RUYAK:  I'll go first.

12              Your Honor, the presentence report, and there's an

13    amended also presentence report that's been filed, has a

14    number of issues that I'd like to address on behalf of the

15    Perfectus defendants.  On some that cover all six defendants.

16    And I'll try to do that in a way that makes it clear.

17              The first part of what we want to address is the

18    issue of restitution.  Restitution applies I think generally

19    to the defendants, particularly the way that the presentence

20    report and the Government has addressed that issue.  We

21    believe that in this case, Your Honor, restitution does not

22    apply in this case, for a number of reasons.  I will address

23    some of those.

24              When it comes to the individual corporations that

25    the Government seeks to obtain restitution for, Ms. Potashner

1    is going to address that issue.

2            So I'm going to address it with regard to the US

3    Government's attempt to obtain restitution.

4            The first issue, Your Honor, to understand is that

5    in order for restitution to apply under either the MVRA or

6    under the statute, there has to be a victim as defined by

7    those statutes and there has to be losses that are

8    identifiable and directly coming from those particular

9    injuries caused by those statutory convictions.

10           The first thing to understand is that the

11   section 371 one conviction by itself cannot grant

12   restitution; cannot have restitution under that statute

13   alone.  It must be particular statutes.

14           In this case, there are two.  One is the statute

15   that deals with the passing false statements through the

16   Customs office, and the other is wire fraud.

17           In those instances, Your Honor, there's limitations

18   in those particular instances as the indictment was rendered

19   and as proof of trial occurred.  So that there are

20   limitations in any event to the restitution.  But first off,

21   we do not believe that restitution is applicable at all in

22   this particular case.

23           First off, under the MVRA, there are only two ways

24   that restitution can be applied.  One is if there is a

25   property right that requires restitution.  In this case,

1    there's not.

2            The Government does not have a property right under

3    the antidumping, countervailing duties.  Those are remedial

4    measures.  There is no property right the Government has.

5            Secondly, even if, as the Government has attempted

6    to show, that they believe that fraud and deceit abrogates

7    the property right, you still have the same problem.  There

8    has to be victims.  There have to be losses that are

9    attributable directly to the activities.

10            In this case, Your Honor, it's very important to

11    understand that when it comes to the countervailing,

12    antidumping duties, that there was no harm here.  The

13    Government pled and proved that none of the pallets that

14    entered the country were ever sold in the United States.

15            They made two proofs that we believe are correct.

16    One is that none were ever sold.  Secondly, they were not

17    imported for the purpose of selling them as products that

18    were under the -- under the antidumping, countervailing duty

19    order.  Either one or both of those had to occur for there to

20    be any harm to the domestic industry or companies within the

21    U.S.

22            So in short, there were no injuries to any U.S.

23    industries or companies because those products were never

24    sold in the U.S.  Therefore, there were no victims of -- that

25    were affected by products coming to the U.S. without paying

 1     the duty.

 2              Even if you take the position, as the Government

 3     has, that it is still entitled to some restitution under

 4     those grounds, you'd have to look to the antidumping,

 5     countervailing duty statute and their purpose.  And I think

 6     we briefed this more fully, Your Honor, so I won't go into

 7     great detail.

 8              THE COURT:  Counsel, I should have mentioned

 9     beforehand, I have read -- and there's been multiple papers

10     that have been submitted.  I have read them all.  So I want

11     you to be rest assured of that.

12              By the way, is there any additional papers that you

13     want to submit before argument?

14              MR. RUYAK:  I don't think so, Your Honor.

15              THE COURT:  I just want to set the record on that.

16              Go ahead, Counsel.

17              MR. RUYAK:  Your Honor, when it comes to this

18     particular issue, it's very clear that antidumping,

19     countervailing duties are not losses to the Government.

20     We've set forth in our brief in detail the cases that state

21     this very clearly, that antidumping, countervailing duties

22     are remedial measures, intended to equalize the sales of

23     products coming to the United States from the outside.

24              The Federal Government has no pecuniary interest in

25     that.  What they do is they collect those duties in the cases

where those products are underpriced.  But the purpose is to keep those products out of the country, not to collect the duties.  So there are no cases that state that countervailing and antidumping duties would be the basis for restitution.

For that reason, since there was no harm, there has been no harm to domestic industries, and no harm to the Federal Government in terms of a loss from the Treasury, then restitution is not appropriate under those circumstances.

Now, the Government argues that because there was specific entries of products that the duties were not paid for.  And if the Court does not agree with us in this regard, that restitution is entirely inappropriate, then we're left with the Counts 11 through 17, which are the specific counts, which are made in the indictment.  And those counts add up to $38,742,686.10 as the duties that were not paid.  And those are the only instances that were indicted.

And the reason for that is also clear because the statute of limitation comes into play here as well, Your Honor.  So the fact that the Government argues that there was conspiracy pled, although we don't know what the object of that conspiracy was because the Government objected to the form of verdict that would have required the specific object of the conspiracy be identified by the jury.  That was not done here.  It's simply a general verdict on section 371.

So we don't know to what extent the jury found what

1    potential object of the conspiracy they convicted on.

2           So we're only left with what they did convict on.

3    That's Counts 11 through 17 when it comes to Customs' duties,

4    which are the large number here that they keep putting forth

5    as restitution.

6           The indictment itself, Your Honor, the maximum

7    restitution is about $39 million.

8           Moreover, I think we have to make a point that

9    because the Government indicted in 2019, the statute of

10   limitations limits how far back the Government can go in

11   identifying the duties that were not paid.

12          As I mentioned, Ms. Potashner will address the wire

13   fraud and the individual companies that they seek restitution

14   for.

15          Your Honor, in addition to that, the Government has

16   taken the position on the Perfectus defendants that they have

17   the ability to pay something like $1.5 billion.  And of

18   course, the Government has the burden of proving with the

19   preponderance of the evidence that those assets actually

20   exist.  They have not done that.

21          The Perfectus defendants ceased operation back in

22   2015.  They have not operated since.  The probation office

23   investigated all their financial information that we could

24   provide.  The only assets left in these companies of the

25   pallets that are now being -- that were seized by the

1    Government in the amount of about $60 million is what the

2    Government's estimated the value.

3         They said it makes sense that there would be other

4    assets, but there simply aren't any that we know of.  They

5    haven't been able to trace any.  Even though their

6    investigation went on for years, they have no basis to

7    contend that the company would have assets in the amount of

8    1.5 billion to satisfy any kind of restitution.

9         The -- the alternative, Your Honor, that they argue

10   is, okay, if restitution is not appropriate, then we should

11   have the same amount as the fine.  That's the alternative

12   theory the Government puts forth here.  Even though the --

13   the probation office did not identify a particular fine.

14         The problem with that, Your Honor, is that we have

15   to look to the statutes and to the maximum penalties for

16   felonies.  The maximum penalty is $500,000 per count.  That's

17   what's there.  If we add those up, it's a much smaller

18   number.  We've put that into our briefs.

19         But the other important issue is under USSG 8C1.1,

20   there is the ability to exceed those statutory maximums in

21   the event that there are losses or gains which would require

22   a larger fine or penalty.

23         But again, Your Honor, I'll take gains first.

24   There were no gains to the defendants.

25         As we know from all of the evidence, Your Honor,

 1    you heard it.  These pallets were brought into the country.

 2    They were never sold here.  So there were no gains.  If there

 3    were no sales, there can be no gains.  They were really

 4    losses to these companies because they didn't sell them.

 5    They could not sell them.

 6            In addition, there were no losses that can be

 7    identified to the Government or to other individuals within

 8    the U.S. as a result of these pallets coming into the

 9    country, because as we said before, again, there were no

10    sales of prices below normal levels because none were sold.

11    If none were sold, then they weren't sold in competition with

12    U.S. companies, U.S. companies didn't have to drop their

13    prices to compete.  There were no sales.  There were no

14    losses traditionally that would be required to be shown under

15    USSG 8C1.1.

16            So, Your Honor, we think what we're left with here

17    for the Perfectus defendants is to calculate the maximum

18    fine.  In calculating the maximum fine, if they do it that

19    way, it comes out to about $10 million, times two, under the

20    statutes, plus the remainder of the fines, to about

21    $29 million.  We put all of the calculations in our brief.

22            The other item I might mention is that the -- as

23    you issued an order on the -- preliminary order on the

24    seizure of the pallets, the pallets have a value of around

25    $60 million.

1          The Government seems to state in their briefing

2     that those don't count toward any fine or penalty.  But they

3     do.  Supreme Court cases, Ninth Circuit cases all find in the

4     case of corporate defendants who have assets, when they are

5     convicted of a criminal offense and their assets are seized,

6     those do count towards the fines and penalties.

7          In this case, that's all that the Perfectus

8     defendants have to pay the fines and penalties anyway, are

9     the pallets that were seized.

10          In addition, Your Honor, I think that suggesting

11     that there be a fine of $1.8 billion when the statutory

12     maximums as calculated are only about 30 million, would be a

13     fine of 60 times the actual maximum fines and penalties that

14     should be appropriately assessed in this particular case.

15          I think that's all I have for right now,

16     Your Honor.

17          THE COURT:  Thank you, Counsel.

18          Counsel?

19          MR. HSIEH:  Your Honor, before Counsel goes, I

20     think the record reflects that, if the Court could verify,

21     that counsel has reviewed the PSR and had a chance to review

22     it with their client.

23          THE COURT:  I'm assuming both counsel have.

24          MS. POTASHNER:  Yes.  Thank you, Your Honor.

25          MR. HSIEH:  Thank you, Your Honor.

1          MS. POTASHNER:  Your Honor, I think because there's

2    a lot of layers of argument here, I think the way it will

3    make the most sense for me to address them is to first

4    address the restitution sought and then the fine issues.

5    Because I think that while they're overlapping, they're a

6    little different.

7          THE COURT:  Okay.

8          MS. POTASHNER:  So in terms of the restitution,

9    obviously, Your Honor knows that restitution has to be

10   tethered to a count of conviction.  That the Court needs --

11   there needs to be a statutory basis for restitution.

12         What Probation suggested was basically the

13   statutory basis being in Count 1, which was the conspiracy

14   count.  I would agree that generally conspiracy, the

15   restitution can be somewhat broad-based, because if it's a

16   conspiracy, then it covers the life of the conspiracy in

17   terms of restitution.

18         The problem is in this case, I don't believe the

19   Court can do that with respect to Count 1.  Count 1 was a

20   multi-object conspiracy charge.  And if the Court remembers,

21   which I'm sure the Court does, we sought a special verdict

22   for that particular count, asking that the Court have the

23   jury identify which object of the conspiracy the jury was

24   convicting upon, whether or not the jury was finding each

25   object or any of the objects on a unanimous basis.

1        We requested that.  We briefed it.  The Government

2   opposed it.  The Court declined to give a special verdict

3   form in this case, which would have, as the Court recalls,

4   identified a particular object of the conspiracy.  We don't

5   have that now.

6        So now we have a conviction with four separate

7   objects for the conspiracy conviction.  The objects are,

8   defrauding the United States.  That's one of them.  Another

9   one would be committing wire fraud.  Another would be false

10  papers through a custom house.  The fourth one would be

11  international promotional money laundering.

12       Each one of those objects would be associated with

13  a different value for restitution.  The rule of lenity

14  requires that if it's unclear that the -- basically for lack

15  of a better way to explain this, the tie goes to the defense.

16  And the most favorable version of that conviction is what is

17  to be applied for sentencing purposes.  And restitution is a

18  piece of sentencing.

19       So when you look at those four objects, the third

20  -- yes, the third object, the wire fraud, is all associated

21  with the investments in CZW.

22       As the Government has conceded, the initial request

23  for 125,000 million in terms of restitution for that, the

24  scheme associated with the wire fraud, was inflated.  So what

25  the Government is seeking for that piece of restitution is

1    5.5 million from all six defendants.

2           So when you look at the conspiracy count, and you

3    distill it down to the object that is most favorable for

4    conviction for the defense, it is based on the wire fraud,

5    which would be tethered to a $5.5 million restitution figure.

6           So I do not believe in this particular case that

7    the Court can look to a broad-based analysis under conspiracy

8    in order to set the appropriate restitution.

9           So that leaves the Court for the warehouse

10   defendants with Counts 2 through 17, I believe.  In terms of

11   the counts associated with Customs fraud, there are two

12   different ways that restitution can be calculated generally

13   by the Court.  One is in cases where the count of conviction

14   within the count itself has a scheme as one of the elements.

15   In those particular cases, again, the Court can issue a

16   broad-based restitution order, which could go beyond the

17   specifics of that count of conviction.

18          That is not the case for Customs fraud counts.

19   Customs fraud counts do not have as an element a scheme or

20   conspiracy or pattern within any of the elements.  Because it

21   doesn't, restitution for each of the Customs fraud counts

22   must be tethered to the allegations within that count.

23          So -- and I know that -- you know, I'm trying to

24   not take up too much time, so I'm talking quickly.

25          Tell me if I'm not making sense, Your Honor.

1          THE COURT:  You're fine.

2          MS. POTASHNER:  When you look at the substantive

3   counts for Customs fraud, again, can't use the conspiracy

4   count, you go to the substantive counts.  And in our papers

5   we explain what the restitution associated with each of those

6   substantive counts would be.

7          Based on the Government's assertions that the full

8   duties should be -- should have been paid, the 400 percent

9   duties, it still boils down to about $34 million.  So at

10   most, this Court should be viewing 34 million as the ceiling

11   for purposes of the restitution for the Customs fraud counts.

12          So starting with that as a ceiling, then you look

13   to whether or not those -- that ceiling should be applied in

14   this case for purposes of restitution.

15          There's a lot of reasons, Your Honor, that we've

16   described in our papers as to why the duties shouldn't be

17   viewed as property rights to the Government, that these

18   duties shouldn't be viewed as losses -- the failure to pay as

19   losses to the Government.

20          I won't go over each and every one of those, but I

21   do want to highlight a couple of things.

22          One thing that I would like to highlight in

23   addition to -- and for the record, I'm joining in everything

24   that Mr. Ruyak already said about this subject.

25          One thing that I'd like to highlight is that the

1     Government takes the position in its papers that the purpose

2     of bringing this aluminum in for our clients was to bring it

3     into the country to melt it down as scrap -- to be used as

4     scrap.

5              So, therefore, if that's the purpose, then the

6     Court should reject the idea that the loss to the Government

7     is at the very highest level of duties.  There is no

8     indication -- and the Government has conceded -- that these

9     items were not brought into the United States to be sold as

10    extrusions; that the Government is taking the position that

11    they were brought into the United States to be melted down.

12             They should be viewed, therefore, as bringing in

13    scrap into the country.  Bringing in scrap into the country

14    is -- would connect it to a very different number in terms of

15    the duty that was not paid.

16             So when you take the 34 million, I believe that it

17    should go down -- I submit to Your Honor it should go down

18    basically to zero, even if the Court finds that in concept

19    the Government has property rights in these duties.

20             The second thing that I'd like to say about the

21    restitution and finding restitution in this case with respect

22    to the duties, is the Government -- the Government's own

23    actions with respect to these importations.

24             The Government had the opportunity to suspend

25    liquidation or to reliquidate in this case.  The Government

1    was investigating for many years in terms of prior to

2    bringing this case a criminal action.

3           Yet, when the Government was litigating this case

4    in the -- in the companion case that we cite to in our

5    papers, the Government took the position -- did not try to

6    reliquidate, did not suspend liquidation, and conceded that

7    the Government was not entitled to any of the unpaid duties

8    because of the government's actions.  They were out of time,

9    and they made decisions with respect to that litigation and

10   those importations, which was, in sum, not to reliquidate.

11          By doing that, the Government has conceded that the

12   Government is not entitled to any of those duties based on

13   that action.

14          The other piece of it, Your Honor, in terms of the

15   duties -- I think what I'll do is I want to turn -- I want to

16   talk about restitution with respect to the -- whatever duties

17   the Court finds are appropriate to order in restitution.  I

18   want to talk about breaking down the different defendants.

19          But before I do that, I'd like to turn to the other

20   piece of potential restitution in this case which is the

21   $5.5 million that the Government is seeking for the

22   investors.

23          In that case, as Your Honor knows from reading all

24   of the papers, we took issue with the Government's initial

25   position and Probation's initial position that $125 million

1    was due in restitution with respect to the investments in

2    CZW.

3              The Government has now taken the position that that

4    calculation was indeed wrong, and that the amount of

5    restitution that would be owed with respect to the wire fraud

6    counts and with respect to the investments in CZW is

7    $5.5 million.

8              I'm not going to quibble with that amount at this

9    time.  However, I would take issue with the idea that any

10   restitution is appropriate under these circumstances.

11             The Government has identified institutional

12   investors as victims in this -- in this case.  Institutional

13   investors do not qualify as victims for the purpose of

14   restitution, Your Honor.  Institutional investors have not

15   lost any money, have not gained any money.  They are not the

16   beneficial owners of a single share of stock.  And the

17   Government has not provided any evidence that they are.

18             What the Government has provided is concession

19   basically that they -- they cannot identify any actual

20   shareholders.  They do not have that information.

21             So they are asking the Court to use these

22   institutional investors as proxies for individual victims.

23   The law does not permit that to happen.  A loss in the

24   aggregate provided to institutional victims is not permitted

25   under the law with restitution.

1          They need to first identify individual victims.

2     Once individual victims are identified, then the Court goes

3     through the calculations in the rubric to figure out how much

4     restitution per individual victim.

5          We don't have any victims named here.  We don't

6     have a single declaration.  We don't have a single

7     shareholder identified.  We don't have a single person or

8     frankly entity that has come forward and said, I've lost

9     money based on this.

10          What we have are institutional investors who do not

11    own any of those shares themselves.  So they do not qualify

12    as investors.

13          Your Honor, I would like to turn to the idea of a

14    joint and several order for whatever restitution the Court

15    orders.

16          As the Court is well aware, the Court has the

17    discretion to order joint and several liability with respect

18    to restitution.

19          But the Court is also permitted not to do that when

20    the facts of the case indicates that that is not an

21    appropriate thing to do, or the Court wants to use its

22    discretion not to order it that way.

23          This is the type of case that the Court should use

24    its discretion not to order joint and several liability with

25    respect to whatever restitution figure the Court concludes is

1    the appropriate restitution figure.

2            When you look at the way the evidence came in in

3    this case, Your Honor, it's clear that the Perfectus

4    defendants ordered pallets.  They were then responsible for

5    importing the pallets.  The Perfectus defendants were

6    responsible through their agents for filling out the customs

7    forms that were filed with respect to the pallets.  And the

8    Perfectus defendants were connected either as recipients or

9    senders of the wires that were associated with these cases.

10           However, unlike the Perfectus defendants, the

11   warehouse defendants had absolutely nothing to do with the

12   initial 2008 IPL loan.  They were not -- they were not

13   involved in any of those loans -- or in that loan in

14   particular.

15           The four warehouse defendants were formed prior to

16   the 2011 duties.  AD/CVD duties were imposed.  They were

17   legitimately formed years beforehand.  They were formed in

18   compliance with California law.  They were formed in large

19   part as single purpose entities to hold title to warehouses,

20   which is exactly what they did.

21           They had nothing to do with the ordering of the

22   pallets, as I said; nothing to do with the importing of the

23   pallets; nothing to do with the paperwork.  They didn't make

24   any representations whatsoever to Customs.  They didn't

25   participate in the liquidation process that occurred with

1    respect to these pallets.

2            They didn't make any statements to any shareholders

3    in CZW.  They didn't participate in any of the wires that are

4    the subject of the indictment and convictions in this case.

5            What they did in short was they warehoused openly.

6    And without any sort of hiding or manipulation, they just --

7    they -- they were warehouses, and they functioned in that

8    way.  They stored property.  And that's it.

9            Under those circumstances, the Perfectus defendants

10   and the warehouse defendants should not be seen as being on

11   equal footing.  They should not be seen as being required to

12   share the burden of the restitution that's ordered in this

13   case.

14           The restitution, to the extent that the Court finds

15   that any restitution flows from the Customs representations,

16   that -- all of those representations were made by Perfectus

17   defendants, and not a one of those representations were made

18   by warehouse defendants.

19           To the extent that the Court finds that restitution

20   is appropriate with respect to representations and losses

21   associated to the investors in CZW, the Perfectus defendants

22   were connected to those representations.  The warehouse

23   defendants were not connected to a single one.  The warehouse

24   defendants aren't mentioned in the prospectus.  The warehouse

25   defendants are not mentioned anywhere.

1          The warehouse defendants did exactly one thing in

2     this case, and one thing only:  they stored openly pallets

3     that were imported by other entities into this country.

4          Under those circumstances, the Court should not

5     order that whatever the restitution amount is, it should not

6     be shouldered equally among all of the defendants.  The

7     Perfectus defendants should be shouldered with the vast

8     majority of the restitution.

9          In terms of the restitution, I know that in our

10    papers we suggested that a restitution hearing was

11    appropriate.  We continue to maintain that, with respect to

12    any Customs duties that the Court is going to view as a basis

13    for restitution.

14          THE COURT:  Counsel, is your request for a

15    restitution hearing as to the amount or as to the obligation?

16          MS. POTASHNER:  In terms of Customs --

17          THE COURT:  No --

18          MS. POTASHNER:  Both.

19          THE COURT:  In terms of asking for a hearing.

20          MS. POTASHNER:  Both, Your Honor.

21          THE COURT:  Okay.

22          MS. POTASHNER:  It's in terms of the total amount

23    with respect to the Customs duty.  It's in terms of

24    apportionment between the defendants.

25          That is for the Customs piece of it.

1              For the investment and the purported losses to CZW

2     investors, I do not believe that there needs to be an

3     evidentiary hearing any more in terms of that amount.

4              I believe based on the Government's new

5     calculations, there's no need to quibble about the

6     $5.5 million.

7              The question I think on that side is a question of

8     law.  Whether or not the investors that the Government have

9     identified, the institutional investors, whether they qualify

10    as a matter of law as victims for purposes of restitution,

11    which I would submit to Your Honor that they do not.

12             For that piece of it, I do not believe that we need

13    to have a hearing.  But for the Customs piece, I very much

14    suggest to Your Honor that we would, if the Court is inclined

15    to order any piece of that as restitution.  Because I take

16    issue with the amount of the duties that the Government

17    proffers that were not paid, the amount that was a loss to

18    the -- to the Government, and the apportionment, all three of

19    those things.

20             If the Court is not inclined to order restitution,

21    the Government has suggested an alternative theory for a

22    monetary penalty, which is a fine.

23             As the Court is well aware, generally, fines for

24    organizations are limited to 500,000 per count.  There are 17

25    counts here.  That's 18 point -- excuse me.  $8.5 million per

1    warehouse defendant.

2            There is a -- there is a way to get around that

3    ceiling, however, which is twice the gross loss or gross

4    gain.  For the same reasons that restitution is not

5    appropriate with respect to the -- the duties that were not

6    paid.  For the same reason that that was not appropriate,

7    it's also not appropriate to find that there is a loss or a

8    gain in this case.

9            Therefore, because there -- there is no loss or

10   gain, there has been no evidence whatsoever that the

11   warehouse defendants proffered -- profited in any way with

12   respect to this case, and there is no evidence that the

13   Government has lost any money, then the statutory maximum

14   fine is $8.5 million per client.

15           The last piece that I would address is the method

16   of payment.  Probation suggests that this Court should find

17   that the four warehouse defendants were criminal purpose

18   organizations.  And the reason that probation suggests that

19   is because it informs how any restitution or fine would be

20   paid.

21           The probation, with all due respect to probation,

22   is suggesting that this -- that these are criminal purpose

23   organizations based on conclusory facts.  Conclusory

24   statements.

25           There is no indication that these four warehouse

1    defendants were created as -- with a criminal purpose in

2    mind.  They were created years before the duties came into

3    being.  They were in part created before the initial IPO for

4    CZW.  The warehouses were bought.  Three of the four

5    warehouses were bought before the duties came into being.  No

6    indication whatsoever that they were created with a solely

7    criminal purpose in mind.

8            Once they were created, there's no indication that

9    they were run as criminal enterprises.  They were properly

10   registered with the State of California.  They were -- the

11   paperwork that needed to be filed was filed, and they were

12   operating as single purpose LLCs, all four of them.

13           So because of that, to -- for the Court to find

14   that these were criminal purpose enterprises or organizations

15   would be an abuse of discretion.  The only reason that that

16   matters, however, Your Honor, and that characterization would

17   matter, would be how the Court sets the payment reschedule.

18           Because if the Court were to make that finding,

19   then a goal may well be of the Court to divest these four

20   entities of all of their property.  If the Court does not

21   make that finding, then of course that is not the goal in

22   terms of sentencing.

23           I know that I hit a lot of subjects.  Let me just

24   take a quick look at my notes, and I would like to answer any

25   questions that the Court has with respect to them.

1          Anything else the Court would like to hear?

2          THE COURT:  Not at this time.

3          Counsel.

4          MR. HSIEH:  Yes, Your Honor.  Good afternoon, Your

5     Honor.

6          In this case, the MVRA mandates that all six

7     defendants be ordered to pay 1.84 billion in restitution.

8     The Court has the basis for that to be paid immediately or

9     within 90 days.

10          I'll cover in tandem some of the arguments of both

11    Mr. Ruyak's clients, the Perfectus defendants; and

12    Ms. Potashner, Mr. Lowder's clients, the warehouse

13    defendants.

14          As an overview the Court is well aware, defendants

15    were convicted of all counts in this trial:  conspiracy, wire

16    fraud, Customs fraud, and international promotional money

17    laundering as charged to the Perfectus defendants.

18          Starting out, the MVRA is applicable for two

19    separate and independent reasons.  One, all crimes involve

20    property, including the 371 count.

21          Defense counsel does not challenge that 371 fraud

22    against the Government is a crime against property; that wire

23    fraud is a crime against property; that International

24    promotional money laundering is a crime against property.

25          So I'll focus on what defendants focus on in both

1    their motion to dismiss and their briefing regarding Customs

2    fraud 545.

3           As we noted in our papers, it's pretty clear, based

4    on Supreme Court precedent, Pasquantino, that the right to

5    money or property is a property right.  It's not the focus on

6    the harm to the domestic industry.  But the right to collect

7    money from the Government is a property right.  The Supreme

8    Court's decision in 2005 is right on point.

9           In that case, individuals tried to smuggle liquor

10   from the United States into Canada and deprive Canada of

11   excise tax or duties that were owed on that liquor.  There

12   were up to double the price of liquor.  In that case, the

13   Supreme Court noted the right to be paid money has long been

14   thought to be a specious of property.  Therefore, that was a

15   property right.

16          We cited cases from other circuits which are in

17   accord, including United States versus Maddox, holding that

18   the Government had a property right to uncollected taxes on

19   cigarettes, when defendants falsely categorized the sale of

20   cigarettes as a sale of gifts, novelties, and souvenirs.

21   Similar fact pattern here.  Where they disguised the pallets

22   as finished merchandise.

23          Again, the right to collect unpaid duties or taxes

24   to the Government is a clear property right.

25          So there all four objects of the conspiracy

1    involved a property right.  As we cite in our papers,

2    independently, the MVRA also mandates restitution when it's a

3    crime involving fraud or deceit.

4            As we noted, the jury instructions and statutes,

5    the plain language of each statute of which the defendants

6    were charged and convicted, involve fraud and deceit.

7            I'm briefly noting some of the arguments I believe

8    Ms. Potashner made regarding the liquidation.  Liquidation is

9    a separate civil matter.  As we noted in our papers, a case

10   opinion cited by this Court, civil and criminal are two

11   different matters.  MVRA requires restitution regardless of

12   whether there was a parallel civil matter.  I think we cited

13   that as United States versus Vandewater, which cited Court of

14   International Trade Decision.

15           We cited other cases showing that criminal

16   restitution is mandatory under the MVRA.  Can't be waived by

17   prior civil settlement.

18           So for those reasons, the liquidation doesn't have

19   any bearing on the analysis here, Your Honor.

20           And I think the case before this Court was -- it

21   wasn't even a criminal matter, it was a false claims act,

22   which is a civil matter, just by preponderance of the

23   evidence.  It was clear distinction between civil liquidation

24   and criminal fraud where the Government proved beyond a

25   reasonable doubt defendant's criminal intent to defraud.

1          Turning briefly to the wire fraud argument.  The

2     Government submitted evidence that, I believe it was, S&P

3     capital IQ found that these were indeed the holders, the top

4     shareholders of China Zhongwang stock.

5          So in identifying these holders of stock, even as

6     institutional investors, we believe the case law we cited,

7     arguments we've made in our papers, and the evidence shown at

8     trial, indicates that these institutional investors did lose

9     an identifiable $5.5 million.

10          As noted in our papers, there was an approximately

11     total $124 million loss based on the defendant's

12     misrepresentations of aluminum sales to the United States and

13     the strength of China Zhongwang holdings in their annual

14     reports year, after year, after year.

15          Next, I want to turn to I believe mostly warehouse

16     defendants' arguments that a joint restitution order is not

17     applicable.

18          Indeed, based on the facts of this case, our papers

19     and the evidence the Court has seen at trial, a joint

20     restitution order is absolutely appropriate in this case.

21          For several reasons:  First, we cited case law that

22     they were convicted of conspiracy.  The co-conspirators are

23     liable for restitutions for victims' losses that were

24     reasonably foreseeable to the defendant.

25          As the Court is aware and defendants have noted in

 1    their briefing, and the Government has as well, MVRA also

 2    allows, if the offense of conviction involves an element, a

 3    scheme, conspiracy or pattern, the Court must order

 4    restitution to all victims harmed by the conspiracy itself.

 5          Taking a step back, Zhongtian Liu was the architect

 6    of this entire fraudulent scheme and used all six

 7    corporations that were convicted at trial as puppets; as part

 8    of its wire fraud scheme; as part of the Customs fraud scheme

 9    and international money laundering scheme.

10          As we note in our papers, the warehouses were

11    formed in 2007.  Scuderia which purchased the Riverside

12    warehouse later in 2014.  October 2008, March 2009 and August

13    2009.

14          Now, as the Court is aware, prior to the AD/CVD

15    duties being enacted, defendant Liu shipped hundreds of

16    millions of dollars of just extrusions to be stored in these

17    warehouses, which were ultimately stored in the four

18    warehouse defendants -- or at least part of them.

19          After the AD/CVD orders were enacted, they were an

20    integral part of the conspiracy in which the 2.2

21    approximately million pallets were stored.

22          As the Court remembers, Toby Henson was fired in

23    part because he did not get a pile-high permit fast enough to

24    store the pallets inside the warehouse.

25          So it's more than reasonably foreseeable to these

1   warehouse defendants that were controlled by the main

2   architect of the scheme and were created to facilitate

3   initially the shipping of the extrusions, but then the

4   pallets, to store them, that the Government would be deprived

5   of $1.8 billion in Customs duties based on the shipment of

6   2.2 million pallets.

7          Again, when looking at the property right, the

8   harm, the focus should be on Customs.  We're not arguing that

9   the victims are the domestic aluminum industry at this time.

10          Now, Your Honor, in regards to another point

11   regarding a restitution hearing, counsel, I believe conceded

12   it's not necessary for the wire fraud counts.  We don't

13   believe a restitution hearing is needed for the Customs fraud

14   counts.

15          At trial and in their papers, I don't believe

16   counsel ever contested the total amount of restitution or

17   loss.  They contended what was applicable to their clients as

18   payments.

19          We've already put in our papers why the

20   shipments -- I think several million to New Jersey -- are

21   applicable because Johnson Shao ultimately directed those

22   false 7501s we submitted.  But I don't think they've

23   challenged in their papers previously the total amount.  Just

24   that it applies to them.  So for those reasons, we do not

25   believe a restitution hearing is needed.

1          Indeed, the -- the total amount of 1.84 basically

2     dollars in restitution should be ordered against all six

3     defendants.

4          So we believe that's sufficient for the Court.

5          I'll just very briefly touch upon there are exactly

6     arguments in the alternative.  But the Court can also issue

7     restitution for whatever reason it does not find the MVRA

8     applicable under 3663.  And why alternatively a fine is

9     applicable in the factors looking at this case as a whole.

10         The Court is well aware the history and

11    characteristics of the defendant.  They actively litigated a

12    civil proceeding in front of Judge Gee in 2017 and failed to

13    appear.  Even after the Court instituted civil contempt

14    sanctions, they still failed to appear.  Have now paid

15    approximately $5.3 million in restitution.

16         Only when getting an adverse judgment in the civil

17    proceedings did they appear in this matter.

18         Looking at the evidence in trial, the behavior of

19    the lead defendant, defendant Liu, using these six

20    corporations as his puppets to further all three schemes, we

21    believe a fine is absolutely appropriate in the event the

22    Court does not issue restitution.

23         Again, we have detailed our arguments why the fine

24    equaled twice the gross gain or gross loss, given that it's

25    indeed a loss to Customs of 1.83 billion, it should have

1     paid.

2              Given the new valuation of the warehouses of 900

3     million to 1 billion, also put in our papers that they noted

4     they had about $1.5 billion in inventory.  We believe that

5     all six defendants should be ordered to pay 1.84 billion in

6     restitution immediately or within 90 days to give them

7     sufficient time to start a sale of those properties.

8              With that, I'll submit at this time, unless the

9     Court has questions.

10             THE COURT:  Thank you, Counsel.

11             Anything further from either side?

12             MR. RUYAK:  Very briefly.  The Government is

13    contending now that because it cites cases on taxes that were

14    not paid that that's somehow appropriate to compare with

15    antidumping, countervailing duties.  That's not the case.

16             There are two cases I'll state, Your Honor:  Kelly

17    versus United States 140 Supreme Court 1565.  And Cleveland

18    versus United States 531 U.S.

19             Those cases stand for the proposition that when

20    you're using regulatory means, such as this to foreclose

21    imports, something like 400 percent of the actual value of

22    the product, those are not taxes.  Those are regulatory

23    interests that are used by the Government.  They are not

24    losses to the Government.  They are not like taxes where the

25    Government is owed.  And so I would commit Your Honor to

1   consider that fact in the restitution.

2          Thank you.

3          THE COURT:  Okay.  Anything else from either side?

4          MR. HSIEH:  Your Honor, I think we already

5   addressed that in our papers.

6          And just for the record, I don't believe corporate

7   representatives here, but give the Court an opportunity to

8   allow defendants to make any statement on behalf of their

9   clients if either wishes.

10          MR. RUYAK:  Your Honor, we have no corporate

11   representatives here in Court.

12          THE COURT:  Okay.  Thank you.

13          MR. HSIEH:  To be clear, the warehouse defendants I

14   understand don't have corporate representatives that wish to

15   make a statement.

16          MS. POTASHNER:  That's correct, Your Honor.

17          THE COURT:  Okay.  Counsel, we've heard argument at

18   this particular time.  We're to the point of sentencing at

19   this time.

20          Now, the suggestion was we had a one at a time --

21   one group of defendants at a time; is that correct.

22          MR. RUYAK:  Yes, Your Honor.  The Perfectus

23   defendants are parents subsidiary.  They're really -- they're

24   together.  One sentencing.

25          THE COURT:  Why don't we go with Perfectus first

 1    then.

 2          Let me make a finding or two first.  Then we'll get

 3    into the sentence itself.

 4          First of all, as to the restitution, that's the

 5    biggest argument.  There are two restitutions we're talking

 6    about; one to the Government, one to the individual

 7    investment industries.

 8          The Court is going to find as to the second one,

 9    the $5 million.  The plaintiff and the Government have not

10    really met their burden of showing who the victim is and how

11    much is due to each victim, particularly when dealing with

12    this type of transaction.  So the Court is not going to be

13    ordering that restitution.

14          The restitution as far as the Government is

15    concerned, the Court finds that there was a 1.9 -- it comes

16    out to 1.4 -- $1,841,812,878 billion on it.  And the Court

17    does find that that is appropriate.  That is taking the

18    $5 million out of the requested amount.

19          MR. HSIEH:  Your Honor, to clarify.  Without the 5

20    million, I believe it's about 1.836 billion.

21          THE COURT:  You're absolutely correct.  I was

22    giving the total amount.  It is $1,836,244,745 on it.

23          The Court finds that that is a loss to the

24    Government of property -- money that they should have

25    received if these crimes had not been committed.

1          Having considered the sentencing factors enumerated

2     in Title 18 of the United States Code Section

3     Section 3553(a), it is ordered the defendant's organizations

4     shall pay to the United States a special assessment of

5     $9,600, which is due immediately.

6          It is also ordered the defendant's organization pay

7     restitution in the amount of $1,836,244,745 pursuant to

8     Title 18 of the United States Code Section 3663(a).

9          The amount of restitution ordered shall be paid as

10    set forth in the list -- or excuse me, to the U.S. Department

11    of Treasury, should it be, should it not?

12          MR. HSIEH:  That can be correct, Your Honor.

13          One second, Your Honor.  We're clarifying.  We

14    additionally identify Customs and Border Protection.

15          MR. HSIEH:  So from our understanding, we do have a

16    representative at -- should be paid to Customs and Border

17    Protection, Your Honor.

18          THE COURT:  Okay.  Order that it be paid to Customs

19    and Border Protection.

20          The defendant organizations shall make nominal

21    monthly payments of at least ten percent of the defendant's

22    organization gross revenue, but not less than a hundred

23    dollars, whichever is greatest, during the term of probation.

24          Payment shall begin 30 days after the commencement

25    of supervision.  Nominal restitution payments are ordered as

1    defendant finds the defendant's organizations economic

2    circumstances do not allow for the immediate or future

3    payment of the amount ordered.

4           It should be an initial payment -- partial payment

5    of -- ordered by the Court of -- 60 million -- excuse me.

6    $60,141,984.29 within 90 days.

7           The defendant organizations shall be held jointly

8    and severally liable with convicted codefendants:  Perfectus

9    Aluminum, Inc.; Perfectus Aluminum, LLC; Scuderia Development

10   LLC; 1001 Doubleday, LLC; Von Karman-Main Street, LLC; and

11   10681 Production Avenue, LLC for the amount of restitution

12   ordered in this judgment.  The victims' recovery is limited

13   to the amount of their loss, and the defendant's

14   organization's liability for restitution ceases if and when

15   the victims receive full restitution.

16          Pursuant to Title 18 of the United States Code

17   Section 3612(f)(3)(A), interest on the restitution ordered is

18   waived because the defendant's organization does not have the

19   ability to pay interest.  Payment may be subject to penalties

20   for defendants and delinquency pursuant to Title 18 of the

21   United Code Section 3612(g).

22          Pursuant to the Guideline Section 5E1.2(a), all

23   fines are waived as the Court finds the defendant's

24   organization has established that it is -- they are unable to

25   pay and not likely to become able to pay any fine in addition

1    to restitution.

2            The Court has found that the property identified in

3    the preliminary order of forfeiture is subject to forfeiture.

4    The preliminary order is incorporated by reference into the

5    judgment and is final.

6            Pursuant to the Sentencing Reform Act of 1984, it

7    is the judgment of the Court that the defendant organization,

8    Perfectus Aluminum Acquisition and Perfectus Aluminum, LLC --

9    is that the proper name of the two -- is hereby placed on --

10   both of them are hereby placed on probation on Count 1

11   through Count 24 of the indictment for a term of five years.

12   The term consists of five years on each Count 1 through 24 of

13   the indictment.  All such terms and -- to run concurrently

14   under the following terms and conditions.

15           These are true.  And I think we've agreed as to,

16   again, the two entities.

17           One is Perfectus Aluminum Acquisitions, LLC and the

18   other one is Perfectus Aluminum, Inc.  These terms and

19   conditions also apply to both a second amended general order

20   -- excuse me.  As to Second Amended General Order 20-4

21   applies to individuals and shall be deleted from the original

22   court order.

23           During the period of community supervision, the

24   defendant's organizations shall pay special assessments and

25   restitutions in accordance with the judgment's order

1    pertaining to such payment.

2            Defendant's organizations shall not commit another

3    federal, state, or local crime.

4            The defendant organizations shall provide the

5    probation officer with access to any requested financial

6    information.

7            Within 30 days from the date of the judgment, the

8    defense organization shall designate an official of the

9    organization to act as the organization representative and to

10   be the primary contact with the probation officer.

11           The defendant organization shall answer truthfully

12   all inquiries by the probation officer and follow the

13   instructions of the probation officer.

14           The defendant organization shall notify the

15   probation officer ten days prior to any change in the

16   principal's business or mailing address or within 72 hours in

17   advance -- if an advance notice is not possible.

18           The defendant organization shall permit a probation

19   officer to visit the organization at any time at his

20   operating business sites.

21           The defendant's organization shall report to the

22   probation officer as directed and shall submit a truthful and

23   complete written report within the first five days of each

24   month.

25           The defendant organization shall be required to

1    notify the Court or probation officer immediately upon

2    learning of:  A, any material adverse change in its business

3    or financial condition or prospects; or B, the commencement

4    of any bankruptcy proceedings, major civil litigation,

5    criminal prosecutions, or administrative proceedings against

6    the organization, or any investigation or formal inquiry by

7    the Government authorities regarding the organization.

8         The defendant's organization shall notify the

9    probation officer immediately of any intent to sell the

10   organization, change the names of the organization, merge

11   with any other business entity, or otherwise dissolve or

12   modify in any form or manner the organization structure from

13   its present status.

14        The defendant organization shall apply all moneys

15   received from any income tax refunds to the outstanding

16   Court-ordered financial obligations.

17        In addition, the defendant shall apply all moneys

18   received from any lottery winnings, inheritance, judgments or

19   any other anticipated or unexpected financial gains to the

20   Court -- to the outstanding Court-ordered financial

21   obligation.

22        If the defendant's organization changes its name,

23   or merges with another company, through a stock or assets

24   purchase, or sells or transfers all or substantially all of

25   its business operations as they exist as of the day of the

1    conviction.  The renamed, newly created, transferred, sold or

2    merged company shall be obligated to meet all the obligations

3    of the defendant's organization in accordance with the

4    judgment's order pertaining to payment, restitution and the

5    special assessment.

6            The defendant's organization shall include in any

7    contract for sale, merger or transfer a provision fully

8    binding the purchaser or any successor in interest thereto

9    the obligations described in the Court-ordered conditions of

10   probation.

11           The defendant's organization shall not engage in

12   any business, services involving or importation of aluminum

13   without the express approval of the probation officer prior

14   to the engagement of such service.

15           Further, the defendant's organization shall provide

16   the probation officer with access to any and all business

17   records, client's lists, or other records pertaining to the

18   operation of the Perfectus Aluminum Acquisition, LLC or

19   Perfectus Aluminum, Incorporated, as directed by the

20   probation officer.

21           Any questions on the sentencing?

22           MR. RUYAK:  Your Honor, one question.  I think it

23   was clear.  You mentioned the $60 million payable in 90 days.

24   That's the value of the pallets, I believe?

25           THE COURT:  That's correct, Counsel.

1           MR. RUYAK:  Thank you.

2           THE COURT:  As to the warehouse defendants.  And

3     again, is it agreeable we do all four at the same time?

4           MS. POTASHNER:  Yes, Your Honor.

5           THE COURT:  The findings of the Court as to

6     Perfectus defendants is the same as to the warehouse

7     defendants.

8           I am not going to find any -- I am going to find

9     that the Government has not satisfactorily met its burden as

10    to the $5 million financial restitution.  Therefore, there

11    will be no restitution ordered as to that.

12          Having considered the sentencing factors enumerated

13    at Title 18 of the United States Code Section 3553, it is

14    ordered that the defendant shall pay to the United States a

15    special assessment of $6,800, which is due immediately.

16          It is ordered the defendant organizations shall pay

17    restitution in the total amount of $1,836,244,745 pursuant to

18    Title 18 of the United States Code Section 3663(a).

19          Again, that amount should be paid to and owed to

20    Customs --

21          MR. HSIEH:  Customs and Border Protection.

22          THE COURT:  Customs and Border Protection.

23          The defendant organizations shall make nominal

24    monthly payments of at least ten percent of the defendant's

25    organization's gross revenue, but not less than $100,

1    whichever is greater.

2          During the term of probation, the defendant shall

3    -- payments shall begin 30 days after the commencement of

4    supervision.  Nominal restitution payments are ordered as the

5    defendant finds the -- as the Court finds that the defendant

6    organizations' economic circumstances do not allow for either

7    immediate or future payment of the amount ordered.

8          The defendant organization shall be held jointly

9    and severally liable with the convicted codefendants:

10   Perfectus Aluminum, Incorporated; Perfectus Aluminum

11   Acquisition, LLC; 1001 Doubleday, LLC; Von Karman-Main

12   Street, LLC; and 10681 Production Avenue, LLC, for the amount

13   of the restitution ordered in this judgment.

14         The victim's recovery is limited to the amount of

15   the loss, and the defendant's organization is liable for

16   restitution.  It ceases if and when the victims receive full

17   restitution.

18         Again, the sentencing in this matter is going to be

19   pertaining to the warehouse defendants, who I've just named

20   in the prior paragraph.  That's everybody's understanding, so

21   I don't have to do it four times.

22         MS. POTASHNER:  Yes, Your Honor.

23         THE COURT:  Pursuant to Title 18 of the United

24   States Code Section 3612(f)(3)(A), interest on the

25   restitution ordered is waived because the defendant's

1   organization does not have the ability to pay interest.

2   Payment may be subject to penalties and default for

3   delinquency is a pursuant to Title 18 of the United States

4   Code Section 3612(g).

5          Pursuant to Guideline Section 5E1.2(a), all fines

6   are waived as the Court finds the defendant's organization

7   has established that they are unable to pay and not likely to

8   become able to pay any fine in addition to restitution.

9          The Court has found that the property identified in

10   the preliminary order of forfeiture is subject to forfeiture.

11   The preliminary order is incorporated by reference into this

12   judgment.

13          Pursuant to the Sentencing Reform Act of 1984, it

14   is the judgment of the Court that the defendant

15   organizations, Scuderi Development, LLC; 1001 Doubleday, LLC;

16   Von Karman-Main Street, LLC; and 10681 Production Avenue,

17   LLC, are hereby placed on probation on the Counts 1 through

18   17 of the indictment for a term of five years.  This term

19   consists of five years of each of the Counts 1 through 17 of

20   the indictment.  All such terms to run concurrently under the

21   following terms and conditions:

22          As I said before, the Second Amended General Order

23   20-4 applies only to individuals.  It shall be deleted from

24   the original Court order.

25          During the period of community supervision,

1    defendant's organization shall apply for special assessment

2    and -- the defendant organization shall pay the special

3    assessments and restitution in accordance with the judgment's

4    order pertaining to such payment.

5           The defendant's organization shall not commit

6    another federal, state, or local crime.

7           The defendant's organization shall provide

8    probation officer access to requested financial information.

9           Within 30 days of the date of the judgment, the

10   defendant's organization shall designate an official of the

11   organization to act in the organization's -- as the

12   organization's representative and to be the primary contact

13   with the probation officer.

14          The defendant's organization shall answer

15   truthfully all inquiries by the probation officer and follow

16   the instructions of the probation officer.

17          The defendant's organization shall notify the

18   probation officer ten days prior to any change in the

19   principal business or mailing address or within 72 hours of

20   advance notice if not possible.

21          The defendant's organization shall permit the

22   probation officer to visit the organization at any time of

23   its operating business sites.

24          The defendant's organization shall report to

25   probation officer as directed and shall submit a truthful and

1    complete written report within the first five days of each

2    month.

3           The defendant's organization shall be required to

4    notify the Court or the probation officer immediately upon

5    learning of:  A, any material or adverse change in the

6    business or financial conditions of the -- or prospects; B,

7    the commencement of any bankruptcy proceedings, major civil

8    litigations, criminal prosecutions, or administrative

9    proceedings against the organization, or any investigation or

10   formal inquiry by the Government authorities regarding the

11   organization.

12          The defendant's organization shall notify the

13   probation officer immediately of any intent to sell the

14   organization, change the name of the organization, merge with

15   another business entity, or otherwise dissolve or modify in

16   any manner the organization's structure from its present

17   status.

18          The defendant's organization shall apply all moneys

19   received from any income tax refund to the outstanding

20   Court-ordered financial obligations.  In addition, the

21   defendant shall pay all moneys received from any lottery

22   winnings, inheritances, judgments or any anticipated or

23   unexpected financial gain to the outstanding Court-ordered

24   financial obligation.

25          If the defendant organization changes its name or

1    merges with another company through a stock or asset purchase

2    or sells or transfers substantially all of the business

3    operations as they exist as of the date of the conviction,

4    the renamed, newly created, transferred, sold or merged

5    company shall be obligated to meet all of the obligations of

6    defendant organization in accordance with this judgment's

7    order pertaining to such payment of the fine and special

8    assessment and creation and implementation -- let me rephrase

9    that.  Special assessment and creation and implementation of

10   any effective anti-money laundering program.

11        The defendant's organization shall include in any

12   contract for sale, merger, or transfer a provision fully

13   binding the purchaser or any successor in interest thereby to

14   the obligations described in the Court-ordered conditions of

15   probation.

16        That will be the order of the Court.

17        MR. HSIEH:  Thank you, Your Honor.

18        I ask the Court to remind defendants, for the

19   record, of their right to appeal.

20        THE COURT:  You have a right to appeal within

21   14 days of today.

22        MR. HSIEH:  Your Honor, once the Court enters the

23   judgment and commitment, the Government understands that

24   they'll be able to enforce that immediate payment barring

25   some other order of the Court.

```
 1                THE COURT:  Okay.
 2                MS. POTASHNER:  I'm confused about that last piece
 3     of what the Court --
 4                THE COURT:  He was making a statement for the
 5     record.  I didn't make any order on it.
 6                Do you want him to say it again?
 7                MS. POTASHNER:  No, Your Honor.  I understood the
 8     Court's judgment.
 9                THE COURT:  Okay.  Yeah.  It speaks for itself.  We
10     may see you back in again, depending on --
11                MR. HSIEH:  Just to correct the record, the payment
12     within 90 days is what I was referring to, Counsel.
13                MS. POTASHNER:  Your Honor --
14                MR. RUYAK:  That only applies to Perfectus
15     defendants.  The $60 million, that's in tied up in pallets.
16     So...
17                THE COURT:  That's the amount of the pallets.
18                It's been a pleasure.  It has been interesting.
19                It may not be over.  We'll see you when you come
20     back in again.
21                (Proceedings concluded at 2:50 p.m.)
22                          CERTIFICATE
23     I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT
24     TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN
25     THE ABOVE MATTER.
```

1    FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

2    REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

3    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

4

5    /s/ Miriam V. Baird            04/20/2022

6    MIRIAM V. BAIRD                        DATE
     OFFICIAL REPORTER
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25